HERMAN, APPELLANT, *v.* SOAL, EXR., APPELLEE.

(No. 6213—Decided November 2, 1942.)

Mr. Sol Goodman, for appellant.
Mr. Jos. L. Meyer and Mr. Benjamin S. Schwartz, for appellee.

Ross, J. This case is in this court on appeal on questions of law from a decree of the Court of Common Pleas of Hamilton county. The court rendered its decision in favor of the defendant at the close of the plaintiff's evidence upon the motion of the defendant for judgment.

By the action, the plaintiff sought to cancel and annul an antenuptial agreement entered into by the defendant's decedent and the plaintiff, whereby it was agreed that each party to the contract freed the other from all claims of whatsoever nature in the estate of the contracting parties, whether based upon rights of inheritance, statutory allowances, or otherwise.

The agreement was ratified by the parties thereto after marriage.

Plaintiff claims that his burden of proof is satisfied when he proves the existence of the antenuptial contract, the possession of substantial property by the defendant's decedent at the time of the execution of the contract, that his participation in her estate was excluded by her will, his election not to take under the will and the existence of an estate after the wife's death. Such was the extent of his evidence at the close of his case.

The plaintiff claims that having introduced such evidence, it became incumbent upon the defendant to show the contract was made in good faith; that a full disclosure was made by the prospective wife of the extent of her estate, and all surrounding circumstances, and that the plaintiff was mentally equal to the wife.

The plaintiff relies upon the case of *Juhasz* v. *Juhasz*, 134 Ohio St., 257, 16 N. E. (2d), 328, 117 A. L. R., 993, to sustain his position. That case does not sustain the plaintiff's contention, for the reason that the facts in that case and in the instant case differ materially. In the *Juhasz case*, what evidently shocked the court, as will later appear, was the disparity between the amount received by the wife and the value of the entire estate of her husband. In the instant case, the question of disparity in such sense is not involved, for the plaintiff husband agreed to take *nothing* out of the wife's estate and she agreed likewise.

Disparity may well develop in another way. As far as the evidence in this case is concerned, the wife may have surrendered more than the plaintiff gave up. It does not appear what estate the plaintiff had at the time the contract was entered into, or when ratified, or what he has now.

It would seem that such a disparity would be more probative of injustice than a disparity between the

amount received from an estate and the entire estate. The instant action it would appear does not involve the question considered in the *Juhasz case,* since each of the contracting parties took *nothing* by the agreement from the other. Obviously, it would be absurd that each thought the other had little or nothing which the other might take by inheritance.

The syllabus in the *Juhasz case, supra,* is in part as follows:

"1. An agreement to marry gives rise to a confidential relation between the contracting parties.

"2. An antenuptial contract voluntarily entered into during the period of engagement is valid when the provision for the wife is fair and reasonable under all the surrounding facts and circumstances.

"3. When the amount provided for the wife in an antenuptial contract entered into during the existence of the confidential relation arising from an engagement is wholly disproportionate to the property of the prospective husband in the light of all surrounding circumstances and to the amount she would take under the law, the burden is on those claiming the validity of the contract to show that before it was entered into he made full disclosure to her of the nature, extent and value of his property or that she then had full knowledge thereof without such disclosure.

"4. Although the provision made for the intended wife in an antenuptial contract is wholly disproportionate, she will be bound by voluntarily entering into the contract after full disclosure or with full knowledge "

It is the contention of the defendant appellee, executor, that such rule does not govern in a case in which the husband is the plaintiff, since, although changes have been made to some extent equalizing the status of men and women, there still exists a preference in behalf of the woman, justifying the conclusion in the *Juhasz case.*

It will be observed that the syllabus in the *Juhasz case* is not so general in the terms used that it can be considered a binding authority in the instant litigation, unless the contention of the plaintiff is correct, that there should be and is not any difference between the appropriate rights of the parties to the antenuptial agreement.

An examination of the opinion by Judge Williams indicates that in no case was language used which indicated that the court considered any situation other than one in which the widow was asking for nullification of the contract.

In *Williamson Heater Co.* v. *Radich,* 128 Ohio St., 124, 190 N. E., 403, the first paragraph of the syllabus is:

"1. The syllabus of a decision of the Supreme Court of Ohio states the law of Ohio, but such pronouncement must be interpreted with reference to the facts upon which it is predicated and the questions presented to and considered by the court."

A short statement of the facts considered by the Supreme Court will be illuminating as to the exact situation considered by that court, and it should be noted in passing that it is held that the action of the wife was barred by the statute of limitations applicable so that the conclusion of the court on the ultimate merits of the case was fully controlled by this later consideration.

In this connection, the language used by the Supreme Court in *Williamson Heater Co.* v. *Radich et al., supra,* at page 126, is peculiarly applicable:

"When obiter creeps into a syllabus it must be so recognized and so considered. It is therefore evident that the *Matzinger case, supra,* is not dispositive of the instant question. *Baltimore & Ohio Rd. Co.* v. *Baillie,* 112 Ohio St., 567, 148 N. E., 233; 11 Ohio Jurisprudence, 796."

It appears that the issues in the *Juhasz case* were raised by an answer and cross-petition, filed by the widow, in a partition proceeding, brought by the devisees of her deceased husband, in which proceeding such devisees ignored the distributive share which the widow would have taken under an intestate distribution of the deceased husband's estate. The widow had filed an election not to take under his will, in which election she also sought to abrogate an antenuptial agreement limiting her to a 1/6 interest in a very small portion of the husband's real estate.

In her cross-petition, she sought a cancellation of such limiting antenuptial agreement, on the ground that the 1/6 interest contracted for was "wholly disproportionate to the property of the prospective husband in the light of all the surrounding circumstances and to the amount she would take under the law," and that there had not been a frank and full disclosure by her prospective husband of the extent of his estate.

The Supreme Court found that the evidence was conclusive in showing that "as a matter of law, full disclosure was not made," and, further, found that the 1/6th interest in a small portion of the real estate of the husband in one county, was wholly disproportionate to what she would have received under the law and to the entire estate of the husband.

It is also apparent from an examination of the contract quoted in the *Juhasz case* that it was so cleverly worded as to leave the impression that the husband owned property only in Cuyahoga county, although the larger portion of his property was located in Lake county. It would appear, therefore, that the Supreme Court was considering a case where definite and designed advantage was taken of a woman under circumstances that to all intents and purposes amounted to fraud.

Now as to the facts developed in the instant case. In considering these, another question has been raised

which must be passed upon here. This involves the competency of the husband to testify in this action against the representative of his deceased wife.

Section 11495, General Code, provides in part:

"A party shall not testify when the adverse party is the guardian or trustee of either a deaf and dumb or an insane person, or of a child of a deceased person, or is an executor or administrator, or claims or defends as heir, grantee, assignee, devisee, or legatee of a deceased person except: * * *

"Nothing in this section shall apply to actions for causing death, or actions or proceedings involving the validity of a deed, will, or codicil; and when a case is plainly within the reason and spirit of the next three preceding sections, though not within the strict letter, their principles shall be applied."

Adverse claims are made by the parties as to the applicability of this section.

Especial attention is directed to the closing words of the section, just quoted. It is obvious that the "next three preceding sections" does not include Section 11495, General Code. Reference to former acts of the Legislature embodying this section show that the words there used were: "Spirit of the last three sections." Section 5242, Revised Statutes. However, whatever may have been the intent of the Legislature in changing the wording, the instant action to cancel a contract does not come within the designations of proceedings in which the provisions of the section are by the last paragraph of Section 11495, General Code, excluded from application to a party offering himself as a witness, and it does not appear that the plaintiff in this case has brought himself within any exception mentioned in Section 11495, General Code, which would permit the acceptance of his testimony.

No better example could be found indicating the value of Section 11495, General Code, as applied to

this testimony of a party where he seeks to give evidence as to matters concerning which death has closed the mouth of his adversary. Common justice requires that in such cases the present witness and the deceased adversary should be placed upon a parity.

The court properly excluded the testimony of the plaintiff as to such matters included within the purview of Section 11495, General Code, and not covered by its exceptions.

Turning now to the record and bearing in mind the only element involving a disproportionate relation must be in the respective estates of the wife and husband, we find no evidence indicating what were the respective values of the estates. Again, it is worth repeating, each agreed to take *nothing* out of the estate of the other. How can nothing be disproportionate to any amount?

We find that six years after executing such original contract and the marriage of the parties, they ratified in definite language the former agreement. The major portion, if not the entire estate of the decedent, was real estate located in the county in which the parties resided, and reference to the tax duplicate and the title records of the county would have and may have disclosed the entire estate of decedent, if the same were not otherwise known to plaintiff.

It is not necessary to base an affirmance of the trial court's action upon the fact that in this case the plaintiff is not the wife. A reading of the plaintiff's evidence discloses no basis for the intervention of a court of equity in behalf of the plaintiff.

The decree of the trial court is affirmed.

*Decree affirmed.*

MATTHEWS, P. J., and HAMILTON, J., concur.