PNIEWSKI, PLAINTIFF-APPELLEE, *v.* PRZYBYSZ, EXCR. OF THE
ESTATE OF STELLA PNIEWSKI, DECEASED, ET AL.,
DEFENDANTS-APPELLANTS.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 25620.   Decided June 21, 1962.

*Mr. Ellis V. Rippner,* for plaintiff-appellee.
*Mr. Stanley J. Zablotny,* for defendants-appellants.

(RADCLIFF, P. J., COLLIER and BROWN, JJ., of the Fourth
District, sitting by designation in the Eighth District.)

RADCLIFF, P. J. We will refer to the parties throughout this opinion as the appellant and the appellee in the hope that no confusion will result. The appellee and the appellant's decedent entered into an antenuptial agreement on July 9, 1952. The appellee and appellant's decedent were married in August of 1952. The antenuptial agreement was recorded on November 3, 1952, in Cuyahoga County Records Volume 74, page 213, also referred to in the briefs as being recorded in Cuyahoga County Records Volume 7649, page 249. The appellant's decedent, wife of the appellee, died on January 4, 1958. The appellant's decedent died testate and administration of her estate was started in the Probate Court of Cuyahoga County. On July 11, 1958, the appellee brought this action in the nature of a declaratory judgment praying that the Probate Court of Cuyahoga County set aside and hold for naught the antenuptial agreement heretofore referred to. The basis of the appellee's suit was that he understood little or no English and therefore he did not comprehend the nature of the antenuptial agreement wherein he released all claims against the estate of the decedent's appellant and received in consideration for his renunciation the undivided one-half interest in fee simple in a $28,000.00 home in suburban Cleveland. He also alleged that he was not represented by counsel, that being another reason that he did not comprehend and understand the antenuptial agreement. The Probate Court found in favor of the appellee and declared the antenuptial agreement null and void. The trial judge did not write an opinion, consequently, we are denied any opportunity to know what reasoning and authorities which led him to the conclusion he reached. The journal entry, disposing of the case insofar as it pertains to this appeal, reads as follows:

"It appearing to the court that the plaintiff did not have independent counsel at the time of the execution of the so-called 'agreement in question' that all advice and instruction came from counsel for the decedent; that the plaintiff did not com-

prehend the import of paper writing or understand the effect thereof; the court, therefore, finds that the contract is void and unenforceable.''

From this judgment the appellant appealed to this Court on questions of law and fact. The appeal was properly reduced to and retained on questions of law only.

The appellant urges two assignments of error, namely,

1. The finding of the court was contrary to law.

2. The finding of the court is manifestly against the weight of the evidence and is not sustained by sufficient evidence.

While two assignments of error are urged, there is only one question before the Court and that is as to the sufficiency and weight of the evidence. To that question and that alone this opinion is addressed. In order to dispose of the case, we in turn must pose and answer three questions. The first of those questions is, did these two elderly people, both of whom had been married before and had adult children, stand in a confidential relationship towards each other? It is generally true that persons engaged to marry do stand in a confidential relationship towards each other. 26 Am. Jur., 893. Antenuptial agreements are carefully scrutinized by the courts, particularly as to the question of full disclosure as to the nature and extent of the property of each. 26 Am. Jur., 894. However, this duty is generally placed upon the prospective husband by the law which also requires that the prospective wife clearly understand the contract that is being entered into.

The leading work on antenuptial agreements, Lindley, Separation Agreements and Antenuptial Contracts, discusses the duty of the husband at page 794. However, at page 801, the author indicates that there is no reciprocal duty on the part of the prospective wife toward the respective husband as evidenced by the following quotation:

''The courts are not too hospitable to the husband's claim that the agreement is not binding upon him because of the wife's failure to disclose.''

In our case there is no charge of failure to disclose the nature and extent of the prospective wife's property but that the appellee did not comprehend and understand what he was signing.

There is also a grave question as to whether or not the

persons stand in a confidential relationship when the impending marriage is one of convenience between people of mature years. This is borne out by the following statement found in 27 A. L. R. (2d), 889:

"The relative or absolute age of the parties may be of significance in determining the existence of a confidential duty giving rise to a duty to make full disclosure."

It certainly follows as a natural corollary that if there is no absolute duty on the part of a prospective wife to disclose the nature and extent of her property, especially in a marriage of convenience between mature adults, consequently, there is no absolute requirement in the law that the prospective husband know and comprehend exactly the contents of an antenuptial agreement. There are no Ohio cases in point. There is an interesting case, almost on all fours with this case, in our neighboring state of Pennsylvania. It is, *In re: McCready's Estate*, 175 Atlantic, 554. The answer to our first question seems, therefore, to be that the relationship is not confidential or sacrosanct when the prospective wife is the owner of the property and the prospective husband has nothing and where the marriage is one of convenience between mature adults.

The marriage in this cause was certainly one of convenience as the appellee had been working for and assisting the appellant's decedent in her home for some time after the death of the appellant, decedent's first husband. The marriage seemed to have been prompted as the means to avoid any possible criticism or gossip concerning the appellee and the appellant's decedent.

The second question we wish to raise is as to essentiality of independent counsel in order to validate an antenuptial agreement? The authorities seem to indicate that the question of independent counsel again goes to the question of whose rights are to be protected. Here again the prospective wife is the favored person in the eyes of the law. See 26 American Jurisprudence, 877 and *Lindley supra*. An excellent annotation is found in 123 A. L. R., 1505, et seq., especially the following quotation:

"Where it is plainly shown that a transaction was fair and free from objectionable influence, and especially where the person supposed to have been at a disadvantage is shown to have

been of strong and independent mind and in a position to form an intelligent judgment, a requirement that in addition he must have had independent advice would seem to be arbitrary and unnecessary.''

The answer to the second question as to the necessity of independent counsel is that such requirement does not exist in the law.

The third question is the nub of the entire matter, i. e., did the appellee understand the agreement? During the marriage the appellee on at least three occasions joined in deeds with the appellant's decedent to property that was listed in the antenuptial agreement to which he had agreed to waive any rights thereto and to join in deeds therefor if requested to do so. These acts certainly amounted to a ratification of the agreement by performing that which he had agreed to do which indicated understanding. The agreement, before being signed, was read to both the appellee and the prospective wife in Polish by the draftsman, a well known Polish lawyer, who had known both the parties thereto for at least 30 years. At this time it should not be necessary to add that both the appellee and the appellant's decedent were Polish in origin.

The appellee had engaged in business in the city of Cleveland over a long period of time as a retail meat dealer and grocer. He had operated and worked in bakeries and had constructed homes and dealt in real estate both as a developer and broker. At the time of the execution of the antenuptial agreement, he was drawing social security as a result of covered employment in the various occupations and trades in which he had engaged. We feel that the conclusion that he did not comprehend the antenuptial agreement in question is against the manifest weight of the evidence and is not supported by sufficient evidence. In reaching this conclusion we have examined not only the citations in the briefs of both appellant and appellee but also the cases of *Juhasz* v. *Juhasz*, 134 Ohio St., 257, *Herman* v. *Soal*, 71 Ohio App., 310, *In re: Lieberman*, 163 Ohio St., 35, syllabus 3 and page 39 of the opinion in particular, and *Troha* v. *Sneller*, 169 Ohio St., 397. Also, 28 Ohio Jurisprudence (2d), 194, et seq., wherein is found some helpful text material.

Holding as we do that the conclusion reached is against the

manifest weight of the evidence, the judgment herein appealed from is reversed and the cause remanded for a new trial.

Judgment reversed and cause remanded.

COLLIER and BROWN, JJ., concur.