HAWKINS, PLAINTIFF, *v.* HAWKINS, JR., EXR. ET, DEFENDANTS.

Probate Court, Cuyahoga County.

No. 605719.   Decided July 6, 1962.

FROST, J.   This matter came on to be heard on a Petition for Declaratory Judgment, wherein the Plaintiff prayed that this Court enter judgment determining that the purported antenuptial agreement signed on November 18, 1952, between the Plaintiff and Robert L. Hawkins, Sr., deceased, is invalid and void and of no effect, and further determining that by reason thereof the Plaintiff is entitled to her intestate share of the

decedent's estate as provided by the Statutes of the State of Ohio.

The Plaintiff, Clara I. Hawkins, is the surviving spouse of Robert L. Hawkins, Sr., deceased, who died on the 18th day of August 1960. In her Petition she alleges that Robert L. Hawkins, Sr., died testate; that his Last Will and Testament was admitted to probate by this Court; that Robert L. Hawkins, Jr., and Mary Kathryn Robinson are the duly appointed and qualified and acting executors of the will.

Plaintiff further alleges that she and the decedent were married on the 19th day of November 1952, in Miami, Florida. Further, on the day before their marriage, namely November 18, 1952, at the request of the decedent she visited the office of one Harry A. Torge and was then and there presented with a paper which he requested her to sign and which she did sign.

Plaintiff further alleges that since the death of Robert L. Hawkins, she has learned that said paper purports to be an antenuptial contract by the terms of which she releases all rights, interest, or claims by way of dower, homestead, inheritance, descent, distribution, allowance for twelve months' support, rights to reside in the mansion house, and all rights and claims as widow, heir, distributee, survivor, or next of kin, and all other rights or claims whatsoever in the property of her husband which he then owned or might thereafter acquire.

Plaintiff further avers that under the terms of said purported contract she was given absolutely nothing nor was it explained to her by the decedent, nor was she given an opportunity to obtain competent advice regarding said purported contract or its legal effect.

By stipulation, the antenuptial contract was admitted into evidence and reads as follows:

"THIS AGREEMENT, made and entered into this 18th day of November, 1952, by and between ROBERT L. HAWKINS, SR., of Gates Mills, Ohio, and CLARA I. CAMPBELL, of Miami Beach, Florida.

WITNESSETH:

"WHEREAS the parties hereto contemplate marriage with each other, and the said Robert L. Hawkins, Sr., is the owner of real and personal property the value of which (after deducting the amount of all encumbrances thereon and the amount of

his other indebtedness and liabilities) is approximately Seventy Six Thousand Nine Hundred and no/100 Dollars ($76,900.00) at the date hereof, and the said Clara I. Campbell is the owner of real and personal property the value of which (after deducting the amount of all encumbrances thereon and the amount of her indebtedness and liabilities) is approximately FORTY FIVE THOUSAND Dollars ($45,000.00) at the date hereof, and

"WHEREAS the parties have agreed that neither party shall have any right, interest or claim in or to the property of the other, either during their marriage or upon the death of the other, and desire to set forth their said agreement,

"NOW, THEREFORE, in consideration of said marriage and of the agreements herein contained, said parties mutually covenant and agree as follows:

"1. Each party hereto may freely sell or otherwise dispose of any or all of his or her own property, now owned or hereafter acquired, by gift, sale or deed, during life, or by last will and testament.

"2. Each party is hereby barred from any and all rights, interests or claims by way of curtesy or dower, homestead, inheritance, descent, distribution, allowance for twelve (12) months' support, right to reside in the mansion house, and all rights or claims as widow, widower, heir, distributee, survivor, or next of kin, and all other rights or claims whatsoever, in or to the estate of the other, whether real or personal, and whether now owned or hereafter acquired, which may, in any manner, arise or accrue by virtue of said marriage.

"3. Each party hereto does hereby release and relinquish to the other, and to the heirs, executors, administrators, devisees, legatees and assigns of the other, all rights, interests or claims of curtesy or dower, inheritance, and to a distributive share, or as widow, widower, heir, survivor, distributee, or next of kin, in and to all the estate of the other, whether now owned or hereafter acquired, and all claim or right to an allowance for twelve (12) months' support, or to reside at the mansion house, and all other rights or claims, whatsoever, which may, in any manner, arise or accrue by virtue of said marriage.

"4. Upon the death of either party, all of his or her property, real and personal, which shall not have been disposed of,

during life or by last will and testament, shall descend to, vest in, and be distributed to such person or persons as would be entitled thereto by the statutes of descent and distribution of the State of Ohio then in effect, had the surviving party died during the life of the other party.

"5. Each party hereby waives any right which he or she might have to administer the estate of the other party, upon the death of such other party.

"6. Each party hereto further agrees, upon request of the other, or his or her heirs, executors or administrators, to execute and acknowledge any and all deeds or other instruments of release or conveyance to enable such other party to convey or otherwise dispose of his or her real property, free from any apparent right or interest of curtesy or dower therein.

"7. Each party hereto stipulates that all matters affecting the interpretation of this agreement shall be governed by the laws of the State of Ohio.

"IN WITNESS WHEREOF the parties have hereunto set their hands the day and year first above written.

Signed and acknowledged
  in presence of

/s/ Jean Kerrigan    /s/ Robert L. Hawkins, Sr.
/s/ Alfred N. Baker    /s/ Clara I. Campbell
STATE OF FLORIDA, :
         : SS
COUNTY OF DADE  :

"On this day personally appeared before me, a Notary Public, ROBERT L. HAWKINS, SR. and CLARA I. CAMPBELL, to me satisfactorily proven to be the persons described in and who executed the foregoing instrument, and acknowledged that they executed the same for the uses and purposes therein expressed.

"IN WITNESS WHEREOF, I have hereunto set my hand and official seal at Miami, this 18th day of November, 1952.

         /s/ Harry A. Torge

Notary Public, State of Florida at Large.
My commission expires Aug. 29, 1955."

In considering this matter on its merits, the Court has taken into consideration the basic principles involved. 28 Ohio Jur. (2d), 194, Husband and Wife, Section 72, states these principles as follows:

"A prospective husband and wife may enter into a valid ante-nuptial contract with respect to the rights of each in the property of the other. Ante-nuptial contracts have long been regarded as within the policy of the law, since they are in favor of marriage and tend to promote domestic happiness by removing one of the frequent causes of family disputes—contentions about property and allowances to the wife. Hence an ante-nuptial contract is, prima facie, valid and binding."

This basic principle has been followed many times in Ohio, one of the most recent cases being decided by the Supreme Court of Ohio in 1959, *Troha* v. *Sneller, Admx. et al.*, 169 Ohio St., 397, wherein it held that:

"An adult man and woman, each owning a substantial amount of property and each having grown children by prior marriages, may lawfully enter into a pre-nuptial agreement whereby each relinquishes every and all rights in the property of the other * * *"

The ante-nuptial contract must be voluntarily entered into and the provisions for the wife must be fair and reasonable under all the surrounding facts and circumstances. *Juhasz* v. *Juhasz et al.*, 134 Ohio St., 257.

Applying the principles laid down in the *Troha* and *Juhasz* cases to the facts as presented by the evidence, the Court finds that Plaintiff at the time of signing the ante-nuptial agreement was a woman 62 years of age with two adult children. She had previously been married to Alexander Campbell, who died in 1935, and married and divorced from Roy G. Smith in 1949. She was and is a woman of considerable business experience, having owned several pieces of property, not only in Ohio but in Florida. Further, for many years she conducted a wallpaper and paint business in Ohio, also a rooming-house business not only in Ohio but in Florida as well. In this connection she has made out income tax reports, personal property tax reports, use tax reports and license applications. She has used the services of an attorney on numerous occasions.

The ante-nuptial agreement sets forth that at the time of the signing thereof she was the owner of real and personal property of the value otf Forty Five Thousand Dollars ($45,-000.00) after deducting all her indebtedness and liabilities.

The Court finds that the decedent at the time of signing

the ante-nuptial agreement was a man 71 years of age with four adult children. He was then a widower, his wife having died in 1949. He was the founder and principal stockholder of the Empire Varnish Company of Cleveland and Chairman of its Board of Directors.

The ante-nuptial agreement sets forth that at the time of the signing thereof he was the owner of real and personal property of the total value of Seventy-Six Thousand Nine Hundred Dollars ($76,900.00) after deducting all of his indebtedness and liabilities, part of such assets being 346 shares of Common stock of the Empire Varnish Company valued at One Hundred Fifty Dollars ($150.00) per share, for a total valuation of Fifty One Thousand Nine Hundred Dollars ($51,-900.00).

The evidence discloses that the Plaintiff and decedent, by letter dated October 30, 1952, and signed by each, requested Raymond E. Cookston, an attorney at law of Cleveland, Ohio, to draw up a pre-nuptial contract because of the impending marriage. (Defendant's Exhibit 2.) We believe the language used therein to be significant. It is as follows:

"We ask that you kindly draw up for us a pre-nuptial contract covering our marriage, which will take place sometime soon.

"We would like to have you provide that each of us waives any right in the property or estate of the other."

The evidence further discloses that Raymond E. Cookston did prepare such an agreement, mailing the same to Robert L. Hawkins, Sr. and Clara I. Campbell at the address set forth in their letter requesting such an agreement. (Defendant's Exhibit 2.)

In the transmittal letter of Mr. Cookston (Plaintiff's Exhibit 3) the following language is used:

"It would be advisable for each of you to have independent legal counsel and I urge Mrs. Campbell to personally discuss and review the agreement with some attorney."

Plaintiff introduced into evidence a memorandum dated January 5, 1953 (Plaintiff's Exhibit F), signed by Mr. and Mrs. R. L. H. Sr., which actually was in the handwriting of the dedecedent:

"Dear Mr. Cookston: Mrs. Hawkins' attorney accepted the

contract as written believing it to be fair to both parties * * *"

Since this Exhibit was introduced by Plaintiff, she is bound by the contents thereof. Even without this letter the evidence discloses that the contract was signed in an attorney's office and that Plaintiff asked no questions of this attorney about its contents or offered any protest to its execution.

In view of the foregoing, the Court finds that the contract was entered into voluntarily by the Plaintiff; that she had full knowledge of its contents and that a full disclosure of decedent's assets was made to Plaintiff as set forth in the agreement.

With reference to the contention that the decedent did not fairly report the true value of his stock in Empire Varnish Company, the Court is of the opinion from the evidence that such was not the case and finds accordingly. If anything, the evidence discloses that the value of the stock was over-valued at the time the contract was entered into. What occurred to the value of the stock afterwards is immaterial and has no bearing on the merits of this case.

In addition to the foregoing, the Court is not unmindful of the fact that Plaintiff received substantial sums of money from the decedent after their marriage, even though this evidence was ruled inadmissible. Further, Plaintiff's assets as set forth in the ante-nuptial agreement remained substantially the same all during the time of the marriage.

It seems clear from the evidence that the purpose of the ante-nuptial agreement was to protect the assets of each so that upon the death of either party their estates would go to their respective children. This desire is not at all unusual, particularly when the parties are of advanced age and neither had contributed to the accumulation of the assets prior to marriage. Each was naturally disposed to his or her own children. This was the thought uppermost in the minds of the parties.

The Court therefore finds that the ante-nuptial agreement signed on November 18, 1952, between Plaintiff and Robert L. Hawkins, Sr., deceased, is valid and in full force and effect and that Plaintiff, as surviving spouse of decedent, is not entitled to her intestate share of the estate of the decedent by reason thereof.

Plaintiff's Petition is dismissed and judgment is rendered against the Plaintiff for the costs herein.

168

Journal Entry to be prepared by Defendant's counsel to conform to Court's findings, noting Plaintiff's exceptions.