JAMES W. DAVIS AND MIRANTI REAL ESTATE CO., A NEVADA CORPORATION, APPELLANTS, v. GEORGE A. JOUGANATOS, JACK W. GREENE AND MARCELLE GREENE, RESPONDENTS.

No. 4870

June 15, 1965

402 P.2d 985

*Morse & Graves* and *Robert W. Austin,* of Las Vegas, for Appellants.

*Lionel & Gunderson* and *Jerome F. Snyder,* of Las Vegas, for Respondents.

**OPINION**

By the Court, BADT, J.:

This is an appeal from a summary judgment entered in favor of the defendants (respondents herein).

The motion for summary judgment was made under the provisions of NRCP, Rule 56(b) and 56(c), and was based upon supporting affidavits and upon the ground that the complaint raised no genuine issue of material

fact, and that the defendants were entitled to judgment as a matter of law. We have concluded that the summary judgment in favor of the defendants was proper and must be affirmed.

We turn, then, briefly to the facts. The complaint alleged Jouganatos and the Greenes were the owners of 42 acres of land situate on what is known as the Strip in Las Vegas, Clark County, Nevada, and that prior to July 24, 1964, the defendants, Jouganatos and the Greenes contacted the plaintiffs for the purpose of joining with them in a co-adventure, whereunder there would be placed upon said premises a resort hotel facility consisting approximately of 1,000 hotel rooms with related casino, restaurant, and convention hall facilities, and whereunder plaintiffs would procure a suitable tenant for the completed project, construction, and interim financing for said project, and that any profits derived therefrom would be equally divided between plaintiffs and defendants Jouganatos and Jack W. Greene; that pursuant to and in furtherance of such agreement Jouganatos and Jack W. Greene, on July 24, 1964, sent a letter to plaintiffs reading as follows:

"This letter will serve as formal confirmation of our wire of this date that we will accept on the following terms and conditions only a combination construction and takeout loan to be obtained by you for a sum of not less than $8,000,000.00 plus whatever amount is necessary to clear the encumbrances on the real property herein involved. Said loan is to bear simple interest at the rate of 6.6 percent per annum on the funds as they are disbursed and said loan is to be amortized over a twenty year period in equal monthly installments.

"In consideration for said loan we agree to the following:

"1.   To enter into a 50–50 co-venture relationship with James W. Davis and Louis Moranti and/or their nominees, with respect to said real property, which co-venture will lease said project on a net, net, net basis.

"2.   To pay you or your nominees a total sum not to exceed 17 points as follows: Five points out of our 50% share of the co-venture profits as received by us, said amount to be secured either by our share of the stock

in said co-venture or our interest in the real property as the case may be; twelve remaining points to be a co-venture debt to be paid out of the construction funds. Said total of seventeen points is to constitute total cost for said construction and takeout loan as well as cost of disbursement control.

"This agreement or acceptance is expressly contingent upon:

"1.   Encumbrances on the real estate being paid off in full from proceeds of said construction loan and co-venturers agreeing to same.

"2.   Lessees and lease being acceptable to lender and co-venturer."

The complaint further alleged that in furtherance thereof plaintiffs secured a lease between Jouganatos and the Greenes and one Magallanes as lessee, and that an escrow was opened at the Guardian Bank, Hollywood, California, between Jouganatos and the Greenes and said Magallanes, wherein the lease and financial commitments were to be deposited, and, upon information and belief, that Primary Development Co., a California corporation, and Carson Land & Development Corporation, a Nevada corporation, were to be subtenants; that in furtherance of the agreement plaintiffs procured the Bank of St. George, St. George, Utah, as a participating bank in the financing of said project and procured from said bank the necessary commitments to complete the co-adventure agreement, but notwithstanding this fact, the defendants conspired between themselves to destroy and subvert the agreement between plaintiffs and defendants and to utilize the efforts of plaintiffs by entering into an agreement to sell to said Primary Development Co. and Carson Land & Development Corporation the said property for $3,600,000, thereby destroying the rights of plaintiffs in and to said property and destroying the financing procured for said project by plaintiffs; that Jouganatos, the Greenes, Magallanes, Primary Development Co. and Carson Land & Development Corporation, and each of them, knew that the object and purpose of such sale of the property were to destroy any rights of plaintiffs in and to said project and said property; that the plaintiffs under the agreement of July 24, 1964, would have been

entitled to 50% of all profits derived from said co-adventure; that such profits would be $1,200,000 per year; that plaintiffs were damaged in the sum of $15,000,000 by reason of such lost profits. Plaintiffs demanded judgment establishing their interest as 50% as tenants in common with Jouganatos, the Greenes and Magallanes, and for $15,000,000 as liquidated damages by reason of breach of contract and for further relief.

Jouganatos and the Greenes answered, admitted the letter of July 24, 1964, and admitted the opening of the escrow at the Guardian Bank in California but set forth as exhibits the precise escrow instructions and alleged the final escrow instruction as of October 5, 1964, limiting the time for performance as 3:00 p.m., October 7, 1964, and alleged that no execution of the lease by sureties (accompanied by financial statements of such sureties) had been deposited, and that under the terms of the escrow instructions all parties were released from further performance. The answer proceeded with sundry denials and sundry special defenses and defendants also moved for summary judgment upon several grounds, including the ground that the complaint did not state a cause of action because the plaintiffs were not licensed brokers.

The agreement upon which the plaintiffs rely required of the plaintiffs the performance of certain things to entitle them to what amounted to a 50% commission. These requirements included the securing of a takeout and construction loan in the sum of some $9,100,000 and the securing of financially qualified lessees. These basic requirements are found both in the initial letter agreement of July 24, 1964, and the subsequent agreements and escrow instructions.

NRS 645.030 defines a real estate broker as "any person, copartnership, association or corporation:

"* * * Who for another and for a compensation, or who with the intention or expectation of receiving a compensation * * * negotiates or offers, attempts or agrees to negotiate the * * * lease of * * * any real estate * * *."

NRS 645.260 reads in pertinent part as follows:

"Any person, copartnership, association or corporation

who, for another, in consideration of compensation by fee, commission, salary or otherwise, or with the intention or expectation of receiving compensation, \* \* \* agrees to engage in, either directly or indirectly, any single act or transaction contained in the definition of a real estate broker in NRS 645.030, whether the act be an incidental part of a transaction, or the entire transaction, shall constitute such person, copartnership, association or corporation a real estate broker or real estate salesman within the meaning of this chapter."

NRS 645.270 provides:

"No person, copartnership, association or corporation engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this state shall bring or maintain any action in the courts for this state for the collection of compensation for the performance of any of the acts mentioned in NRS 645.030 without alleging and proving that such person, copartnership, association or corporation was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose."

Under these provisions a complaint seeking recovery of a real estate broker's commission which fails to allege that the plaintiff was licensed as a real estate broker or salesman does not state a cause of action. Whiddett v. Mack, 50 Nev. 289, 258 P. 233, and authorities therein cited. The letter agreement of July 24, 1964, executed by Jouganatos and Jack W. Greene, agreeing to pay a commission or compensation for financing the proposed project and procuring an acceptable lease and lessees, was addressed to James W. Davis, with a carbon copy to Louis Moranti, neither of whom was a licensed Nevada real estate broker. Davis, a California resident, had a California real estate broker's license.

Although the question is not raised by appellants, it becomes necessary to determine whether Nevada or California law governs the enforceability of this contract. The subject real estate was located in Nevada, the parties first met and negotiated in Nevada; and after a

phone call by Davis to Jouganatos in Sacramento, the letter agreement and a copy thereof reflecting the understanding reached during the telephone conversation was mailed from Sacramento to Davis in California and Moranti in Las Vegas. The parties set up an escrow in a California bank to complete the agreement. Essential to a recovery by appellants was the securing of a financially qualified lessee who would sign the lease held by the escrow agent. The appellants alleged that they would have secured such lessee but for the conspiracy of the defendants. We may accept the view that in the case of a broker-agent contract made at the situs of the land and performable generally anywhere, its validity and effect is governed by the law of the state where the contract was executed. Richmond-Carcia Oil Co. v. Coates, 5 Cir., 17 F.2d 262; Benedict v. Dakin, 243 Ill. 384, 90 N.E. 712. However, in the instant case performance was not to be anywhere but in California, as clearly evidenced by the escrow setup in the California bank. And where performance is in a state other than the state where the contract was executed and the land is located, the law of the state of performance governs. Annot., 159 A.L.R. 266; Richland Development Co. v. Staples, 5 Cir., 295 F.2d 122; James v. Hiller, 85 Ariz. 40, 330 P.2d 999; In re Stoddard's Estate, 60 Wash.2d 263, 373 P.2d 116. As stated in James v. Hiller, 330 P.2d at 1001:

"The general rule is that a brokerage contract is a contract of employment for personal services and its validity is determined by the law of the state where made unless it appears from the contract that it is to be performed elsewhere, in which event the law of the state where it is to be performed governs irrespective of the location of the property involved." Therefore, the validity and enforceability of the letter agreement is governed by California law, the place where the contract was to be performed.

Under California law a "real estate broker" is any person who for compensation or with the expectation of compensation negotiates to lease real property or solicits lenders to make loans secured by real property. Cal. Business & Professions Code § 10131. In California a lease "includes any lease, whether such lease is the sole

transaction involved, or the principal or an incidental part of the transaction involved." Cal. Business & Professions Code § 10135.

■■■■

The July 24 letter agreement, by its terms, was an agreement "to enter into a 50–50 co-venture relationship with James W. Davis and Louis Moranti * * *." Both Davis and Moranti were required to perform. Davis alone had a California brokerage license. In Haas v. Greenwald, 196 Cal. 236, 237 P. 38, it was definitely held, by a unanimous decision of the California Supreme Court that such a contract, unenforceable as to the person not holding a broker's license, was void in its entirety even though one of the parties acting as broker did hold a broker's license. Haas v. Greenwald, supra, was cited with approval in Weber v. Tonini, 151 Cal.App.2d 168, 311 P.2d 132, where a District Court of Appeal of California said: "Since the contract is an entire one the illegality in this particular invalidates it *in toto*. Civ. Code, § 1608; Haas v. Greenwald, 196 Cal. 236, 237 P. 38, 59 A.L.R. 1493." A hearing by the supreme court was denied. We are therefore compelled to hold that, California law being applicable under the conflict of laws doctrine, the contract is illegal and cannot be the basis of recovery.[1]

The summary judgment is affirmed.

THOMPSON, J., and ZENOFF, D. J., concur.

---

[1] With reference to actions in which a non-resident broker seeks to recover compensation for the sale of land within the state when the brokerage contract and its performance were in another state, the cases are quite uniformly to the effect that where the law of the forum prevents recovery, the non-resident broker will be barred from recovery within the forum, even though the law of the state where the contract was made and where performance was to be had did not bar the action. Minot v. Hoyt Bros. Inc., 53 N.J.Super. 332, 147 A.2d 92; Tanenbaum v. Sylvan Builders, Inc., 29 N.J. 63, 148 A.2d 176; Reed v. Kelly, 7 Cir., 177 F.2d 473; Stahl v. Township of Teaneak, D.N.J., 162 F.Supp. 661; see also Arnold v. Wilson, S.D. Tex., 107 F.Supp. 961. In analyzing the above cases and statutes similar to NRS 645.270, it has been stated that "such a statute closing the doors of the courts appears to be a directive which the courts quite clearly should follow irrespective of whether the contract would otherwise be enforceable under the conflicts of laws principles." Richland Development Co. v. Staples, 295 F.2d at 126. This view is supported by Professor Ehrenzweig who has stated

---

that: "Foreign brokers who are not licensed locally, or who are employed by a contract which violates the local Statute of Frauds, will not be permitted to recover commissions for sales of forum land, even though either the contract of employment or the contract of sale was executed or performed in a state whose law would have entitled them to that commission. Ehrenzweig, The Real Estate Broker and the Conflict of Laws, 59 Colum.L.Rev. 303, 306 (1959)."