FRED BRADDOCK, APPELLANT, *v.* ALMA C. BRADDOCK, RESPONDENT.

No. 7740

No. 7875

November 21, 1975                    542 P.2d 1060

*Monte J. Morris,* Las Vegas, for Appellant.

*Rose, Norwood & Edwards,* Las Vegas, for Respondent.

## OPINION

By the Court, BATJER, J.:

Appellant and respondent were married May 14, 1957. Appellant filed a complaint for divorce in the district court on July 27, 1973, alleging that there were no minor children born as issue of their marriage, that all property interests between the parties had been settled by an antenuptial agreement, and that there was no community property belonging to the parties to be considered in the court's decision. In its judgment and decree of divorce the district court determined that the antenuptial agreement was void *ab initio,* and required appellant

to pay respondent $173,429.90 as her share of the property, and her attorney's fee of $7,500, plus costs of the suit. Respondent was also awarded the furniture in the Florida home and the privilege of residing in that home, rent free, pending final determination of the matter on appeal. By an order of the district court filed May 17, 1974, the appellant was further required to pay respondent $150 per week during pendency of this appeal. From the judgment of divorce and the support order these appeals were taken.

*7740:*

Appellant and respondent met sometime in October of 1956, and during the first part of 1957 seriously considered marriage. On May 2, 1957, at the offices of appellant's attorney located in Columbus, Ohio, appellant and respondent executed the antenuptial agreement. At that time appellant was living in Washington Court House, Ohio, and respondent was living in Columbus, Ohio. The antenuptial agreement in pertinent part provided as follows: "Whereas, the Parties have agreed that neither party shall have any right, interest, or claim in or to the property of the other, either during their marriage or upon the death of the other, except as hereinafter stipulated and provided, and desire to set forth their said agreement, . . . Second Party, in consideration of said marriage and of the agreements made by First Party herein, hereby agrees to accept and receive the payments and provisions hereinabove stipulated in lieu of any or all rights or claims of dower, inheritance, and descent, in and to the real property of the First Party, now owned or hereafter acquired, and in lieu of any and all rights or claims to a distributive share of his personal estate, now owned or hereafter acquired, and in lieu of any and all claims for an allowance for a year's support, and in lieu of any and all rights or claims which Second Party may have or acquire as wife, widow, distributee, survivor, or next of kin, in or against the Estate of the First Party, which may in any manner arise or accrue by virtue of said marriage; . . ."

1. Because the agreement was executed in Ohio and was to be performed there, its validity must be construed in the light of Ohio law. See, Jones v. Jones, 86 Nev. 879, 478 P.2d 148 (1970); Davis v. Jouganatos, 81 Nev. 333, 402 P.2d 985 (1965).

In its decision rendered from the bench the trial court found, and it is supported in the record, that at the time of signing the antenuptial agreement respondent was substantially younger

than appellant. Appellant was "a businessman with some sophistication and a good deal of success," and respondent "had little or no formal education or business experience and, in fact, was working as a waitress."

Appellant correctly represented the extent of his wealth to be $700,000 in May 1957, and testified he believed respondent had approximately $2,500 in a safe deposit box, plus some furniture and clothing. Neither party had dependents from a prior marriage.

The parties had discussed the possibility of signing an agreement which was to be drawn by appellant's attorney. On the day the antenuptial agreement was executed, appellant's attorney was not present; however, an associate or attorney who shared the offices was present, and in his deposition explained: ". . . [M]y role was to be a witness, the notary, explain the document, at least by reading it to them what was involved and taking their signatures."

Respondent was to receive $500 per year, after she signed the agreement or the marriage was consummated, and she was, in fact, paid $500 per year for the years 1957 and 1958, and beginning May 14, 1959, was paid $1,000 per year. Respondent testified she believed the yearly payments were anniversary gifts and understood the agreement guaranteed a quarter of appellant's estate to her upon his death, but had nothing to do with divorce.

In its findings of fact and conclusions of law the district court concluded: "The matters affected by the antenuptial agreement were so important to the Defendant's spousal rights that she was entitled to have independent counsel at the time of execution of said agreement. . . . Defendant did not have independent legal counsel . . . [and] the ante-nuptial agreement was void at the time of its execution. . . ."

In Ohio an antenuptial agreement is not void merely for lack of independent legal counsel. Pniewski v. Przybysz, 183 N.E.2d 437 (Ohio App. 1962). However, it must be knowingly, understandingly, freely and voluntarily entered into by both parties. In Juhasz v. Juhasz, 16 N.E.2d 328, 331 (Ohio 1938), the Ohio Supreme Court said: "An engagement to marry creates a confidential relation between the contracting parties and an antenuptial contract entered into after the engagement and during its pendency must be attended by the utmost good faith; . . . After being fully informed and advised, the intended wife may be entirely satisfied with the provision

made for her, and, if she then voluntarily enters into the contract, she is bound by its terms." In Rocker v. Rocker, 232 N.E.2d 445, 456 (P.Ct. of Cuyahoga County, Ohio, 1967), that court stated: "In the last analysis, each case in this field of law must be decided on its own particular facts, and not solely by rote."

Whether the antenuptial agreement was knowingly, understandingly, freely and voluntarily entered into is a question of fact which was resolved against the appellant by the trial court. There is sufficient, albeit conflicting, evidence, revealing that respondent did not knowingly and understandingly enter into the agreement. Upon this evidence and applying Ohio law[1] the trial court was free to find the agreement to be void, and committed no error in doing so. Fletcher v. Fletcher, 89 Nev. 540, 516 P.2d 103 (1973).

2. Although appellant argues at great length that the trial court erred in finding community property belonging to the parties and awarding $173,429.90 to respondent as her share, a close examination of the trial court's decision delivered from the bench, its finding of fact and conclusions of law, as well as its judgment, fails to reveal any finding on the part of trial court of community property, but instead it found that respondent had an "interest" in $346,859.80 and ordered that appellant pay to her one-half that amount "as her share of property rights." The trial court awarded respondent her share after setting aside to both parties their sole and separate property.

The property which consists of treasury bills, stocks, bank accounts, and cash was all accumulated in Ohio prior to the time appellant moved to Nevada. "The nature and rights of married persons in personal property acquired during marriage

---

[1]Compare the following Ohio cases where the appellate courts of that state have upheld antenuptial contracts, all distinguishable from the case at bar. Osborn v. Osborn, 248 N.E.2d 191 (Ohio 1969) (wife of considerable means with business experience); Rocker v. Rocker, supra (wife bright and experienced woman who had been in business for 18 years); Hawkins v. Hawkins, 185 N.E.2d 89 (P.Ct. of Cuyahoga County, Ohio, 1962) (wife was woman of considerable business experience); Troha v. Sneller, 159 N.E.2d 899 (Ohio 1959) (both parties adults with substantial property, each having four grown children by former marriages); In Re Mosier's Estate, 133 N.E.2d 202 (P.Ct. of Franklin County, Ohio, 1954) (wife received $7,000 for giving up interest in estate worth $40,000, amount not so disproportionate as to give rise to presumption of fraud).

is determined by the laws of that state which is the matrimonial domicile of the parties at the time the property is acquired." Choate v. Ransom, 74 Nev. 100, 104, 323 P.2d 700, 702 (1958). Ohio Revised Code, Section 3105.18[2] provides as follows: "The court of common pleas may allow alimony as it deems reasonable to either party, having due regard to property which came to either by their marriage, the earning capacity of either, and the value of real and personal estate of either at the time of the decree. Such alimony may be allowed in real or personal property, or both, *or by decreeing a sum of money, payable either in gross or by installments, as the court deems equitable.*" [Emphasis added.]

In Creelman v. Creelman, 220 N.E.2d 684, 686 (Ohio App. 1966), the court stated: "It is not the province of this court to take issue with the court below in its division of property between the parties so long as the court's determination is made without apparent unreasonableness or arbitrariness. The property adjustments made here, on the other hand, appear to be quite just and reasonable and well within the allowable limits of the lower court's discretion." The trial court awarded property to respondent without apparent unreasonableness or arbitrariness, and it must be upheld. Cf. Clark v. Clark, 136 N.E.2d 52 (Ohio 1956); Boehm v. Boehm, 138 N.E.2d 418 (Ohio App. 1956); Hill v. Hill, 136 N.E.2d 131 (Ohio App. 1955). See also Esteb v. Esteb, 181 N.E.2d 462 (Ohio 1962).

The amount of property, if any, subject to allocation to respondent was a question of fact to be determined by the trial court. This determination is supported in the record. Fletcher v. Fletcher, supra. Again applying the law of Ohio, it does not appear that the trial court was unreasonable or arbitrary and we find no error in its award of $173,429.90 to respondent.

3.   Appellant contends that the trial court further erred by providing in its judgment and decree of divorce that respondent could continue to occupy the home in Fort Lauderdale, Florida, owned by Braddock Company of which appellant is sole stockholder, during the pendency of any appeal the appellant may pursue to this court, because respondent had $45,000

---

[2]Ohio Revised Code, Section 3105.18 was amended effective September 23, 1974, in a manner which would appear to render it more favorable to respondent's position.

at the time of separation and $33,000 at the time of trial, and could well afford to rent her own house or apartment during appeal.

Respondent had lived in the Florida home and maintained it for several years prior to appellant's filing for divorce. She was approximately 46 years of age at the time of trial, never worked during the marriage, and had no particular skills for gainful employment. It is apparent that the trial court gave proper consideration to the matter and exercised its power to provide for the wife's support pursuant to NRS 125.150(3).[3] Cf. Buchanan v. Buchanan, 90 Nev. 209, 523 P.2d 1 (1974).

4. Appellant's contention that the trial court erred in awarding respondent attorney fees in the amount of $7,500 is without merit. A district court may allow reasonable attorney fees in an action for divorce if they are in issue under the pleadings. NRS 125.150(2).[4] The wife is not required to show necessitous circumstances to support the court's award of attorney fees, and such award is within the sound discretion of the trial court. Fletcher v. Fletcher, supra; Sargeant v. Sargeant, 88 Nev. 223, 495 P.2d 618 (1972).

*7875:*

On May 17, 1974, the trial court granted respondent's motion for judgment for arrearages and for payment of support during pendency of appeal. In its order the trial court ordered the sum of $150 per week be paid to respondent during pendency of the appeal to this court. Appellant admits in his reply brief that he stipulated to pay respondent $150 per week during the pendency of the case in the trial court but not during the pendency of the appeal in the appellate court. However, in the stipulation filed October 29, 1973, prior to the time the complaint for divorce came on for trial, appellant stipulated: ". . . [T]hat plaintiff shall pay to the defendant as and for support, *pendente lite,* the sum of One Hundred Fifty ($150.00) per week, the first payment to be made on the 27th

---

[3]At the time the lower court entered its judgment and decree of divorce NRS 125.150(3) provided:

"The court may also set apart such portion of the husband's property for the wife's support and the support of their children as shall be deemed just and equitable."

[4]NRS 125.150(2): "Whether or not application for suit money has been made under the provisions of NRS 125.040, the court may award a reasonable attorney's fee to either party to an action for divorce if attorneys' fees are in issue under the pleadings."

day of September, 1973, and continue each and every week during the pendency of this action."

An action is pending from the time of filing the complaint until its final determination on appeal. Rilcoff v. Superior Court of Los Angeles County, 123 P.2d 540 (Cal.App. 1942). Appellant cannot now complain of the trial court's enforcing a stipulation entered into in that court regarding payments during the pendency of the action. In Buchanan v. Buchanan, supra, on appellant's motion after the appeal was perfected, we reinstated the trial court *pendente lite* order and ordered respondent to pay appellant for her support and child support while the appeal was in progress.

The judgment and orders of the lower court are affirmed.

GUNDERSON, C. J., and ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.