James SCHULER, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 87–135.

Supreme Court of Wyoming.

April 5, 1989.

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender; Julie D. Naylor, Appellate Counsel; Norman A. Newlon, Legal Intern, Cheyenne, for appellant.

James Schuler, pro se.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Paul S. Rehurek, Asst. Atty. Gen., Cheyenne, for appellee.

Before CARDINE, C.J., THOMAS, URBIGKIT and MACY, JJ., and KAIL, District Judge.

THOMAS, Justice.

The primary question to be addressed in this case is whether a claim that a convict's sentence is illegal can be raised in a proceeding initiated pursuant to §§ 7–14–101 to –108, W.S.1977.[1] There are collateral issues raised which assume jurisdiction in the district court. These need not be addressed. The appellant also presents a

---

1. These provisions were amended in 1987, after the filing of the petition in this case, but not in respects which are material to this appeal. Ch. 157, § 3, S.L. of Wyoming 1987 at 375–376, now found in §§ 7–14–101 to –108, W.S.1977 (June 1987 Repl.).

question of ineffective assistance of appellate counsel for failure to present the issue of whether his sentence should be adjusted in accordance with an amendment to the sentencing statutes that became effective following the entry of the judgment and sentence in his case but prior to the disposition of his appeal. That contention was not presented to the district court. We conclude that the claim presented under the guise of a petition for post-conviction relief in the district court could not be addressed as such, and we affirm the order of the district court dismissing the petition for post-conviction relief.

Schuler presented a pro se brief in this case in which he states the issue to be:

"Under 6–1–101(c), Wyoming Statutes 1983, defendant's case was 'pending' and, as such, defendant's habitual criminal sentence should be dismissed."

A Brief of Appellant also was filed by the State Public Defender's Office which presents the following four issues:

"1. Whether appellant's right to due process under the United States and Wyoming Constitutions was violated by appellate court's failure to apply the savings clause of a state statute that became effective during the pendency of appellant's appeal and whether the appellate court disregarded constitutional separation of powers when it failed to apply the savings clause.

"2. Whether it is unconstitutional to sentence appellant to a life term for a non-violent crime.

"3. Whether failure by appellant's counsel to brief the appellate court as to the change in the statute violated appellant's right to effective assistance of counsel guaranteed by the United States and Wyoming Constitutions.

"4. Whether appellant was denied due process by the failure of the district court to appoint an attorney to represent him in post-conviction relief."

In its Brief of Appellee, the State of Wyoming sets forth six issues to be considered:

"I. Whether the issues raised by the appellant pro se and through counsel are cognizable in a post-conviction action?

"II. Whether the appellant's case is a case described in W.S. 6–1–101(c) as 'a case pending on or after the effective date of this act * * *.'?

"III. Whether the appellant's case is a case described in W.S. 6–1–101(c) as one in which 'the penalty under this act for the crime is different from the penalty under prior law * * *.'?

"IV. Whether the appellant's sentence as a habitual criminal violates the Eighth Amendment?

"V. Whether the appellant received ineffective assistance of counsel on his direct appeal from conviction where counsel did not raise the issue of the change in statute?

"VI. Whether the appellant was denied due process when the district court declined to appoint counsel in this post-conviction action?"

Schuler's conviction of burglary, which resulted in a sentence to life under the provisions of § 6–1–110, W.S.1977,[2] was reviewed on direct appeal by this court in 1983. *Schuler v. State*, 668 P.2d 1333 (Wyo.1983). The briefs in that appeal were filed prior to the effective date of the amendment to the statute upon which Schuler here relies, and, consequently, the question of whether he should have been sentenced pursuant to the amendment to the statute rather than the statute in effect at the time of his sentencing was not raised. Under the statute in effect at the time of the judgment and sentence, the life sentence was mandatory upon the finding of the jury at his trial that Schuler had committed three prior felonies.

This case was commenced on January 16, 1987, when Schuler filed a document entitled "POST–CONVICTION PETITION TO

---

2. Subsequent to Schuler's conviction and the entry of judgment and sentence, the Criminal Code was revised by the legislature of the State of Wyoming (Ch. 75, S.L. of Wyoming 1982 and Ch. 171, S.L. of Wyoming 1983). The provisions are now found as §§ 6–10–201 and 6–10–202, W.S.1977 (June 1983 Rev.).

VACATE JUDGMENT AND SENTENCE, PURSUANT TO 7–14–101, ET SEQ, Wyoming Statutes 1977." The petition is on a prepared form that includes a way for a petitioner to indicate whether he requests the assistance of appointed counsel. Schuler did check a box preceding the statement "I do request that counsel be appointed to represent me in this proceeding, pursuant to 7–14–104, Wyoming Statutes as amended." The effect of checking the box is to manifest an affirmative request.

Schuler filed a memorandum with his petition in which he urged that the amendments to the habitual criminal sentencing statutes, which became effective while his case was on appeal to this court, mandate a conclusion that he was sentenced illegally. His point was that, although the statute in effect at the time of the entry of his judgment and sentence required the imposition of a life sentence, once he was found to be a habitual criminal on the basis of the commission of three prior felonies, the amended statutes do not justify that result. Instead, the new statutes permit one to be found a habitual criminal, with the imposition of a life sentence, only if he has been found to have committed a violent felony coupled with three prior felony convictions. Section 6–10–201, W.S.1977 (June 1983 Repl.). In support of this contention, Schuler argued that he was entitled to the benefit of sentencing under the amended statutes because of the provisions of § 6–1–101, W.S.1977 (June 1983 Repl.), particularly subsection (c) thereof.[3] Schuler argued in his memorandum that not only did this statute manifest a legislative intent that the amended provision would apply if that would result in the imposition of a lesser sentence but, also, that any ambiguity in the application of the statutes must be resolved in his favor pursuant to the rule of lenity.

The subsequent proceedings in the district court were awkward. Schuler filed a Notice of Appeal on February 10, 1987 with a request that the court file the notice on the date that the district court denied or dismissed his petition for post-conviction relief. The district court did not honor Schuler's request, but filed the notice prematurely, which made it effective on the date the petition was denied or dismissed pursuant to Rule 2.01 W.R.A.P. A responsive pleading, a motion to dismiss the petition pursuant to § 7–14–105, W.S.1977 [4] and Rule 12(b)(6), W.R.C.P, was filed by the State of Wyoming on February 12, 1987. A memorandum was filed in support of the motion, which urged two grounds for dismissal: first, the State argued that Schuler was contesting only the legality of sentence and, for that reason, no relief could be afforded under the post-conviction statutes; second, the State argued that, if the post-conviction statutes were applicable, there was no merit in Schuler's position. Schuler then filed a motion to amend his petition to "invoke the jurisdiction of this court under Rule 36, W.R.Cr.P., as well as the originally stated jurisdiction under 7–14–101, et seq, Wyoming Statutes as amended." Schuler accompanied that

---

3. Section 6–1–101, W.S.1977 (June 1983 Repl.), provides:

"(a) This act may be cited as the Wyoming Criminal Code of 1982.

"(b) This act does not apply to crimes committed prior to the effective date of this act. Prosecutions for a crime shall be governed by the law in effect on the date when the crime occurred. A crime was committed prior to the effective date of this Act if any of the elements of the crime occurred prior to the effective date of this Act.

"(c) In a case pending on or after the effective date of this act, involving a crime committed prior to the effective date, if the penalty under this act for the crime is different from the penalty under prior law, the court shall impose the lesser sentence."

4. Section 7–14–105 provides:

"(a) Within thirty (30) days after filing the petition, or within any further time as the court may fix, the attorney general on behalf of the state shall answer or move to dismiss the petition. No other or further pleadings shall be filed except as the court may order on its own motion or on that of either party.

"(b) The court may grant leave to the petitioner, at any stage of the proceeding prior to entry of judgment, to withdraw the petition.

"(c) The court may by order authorize:

"(i) Amendment of the petition or any other pleadings;

"(ii) The filing of further pleadings; or

"(iii) An extension of the time for filing any further pleading other than the original petition."

motion with a memorandum that stated " * * * Defendant herein is attacking the legality of his 'life' sentence, and is not attacking the legality of his conviction." In addition to the motion and memorandum, Schuler filed an amended petition and a separate motion to deny the State's motion to dismiss the petition.

There is no ruling of record specifically addressing the motion to amend filed by Schuler. In effect, it was resolved by the language of § 7-14-105, W.S.1977, which provides that no additional pleadings can be filed except by order of the court. On May 13, 1987, the district court entered its order providing:

"THE ABOVE MATTER HAVING come before the Court upon a petition for post-conviction relief,

"IT IS HEREBY ORDERED THAT the petition be dismissed for the reasons set forth in the memorandum filed by the state of Wyoming on February 12, 1987."

As noted, Schuler previously had filed the documents necessary to perfect his appeal, including a designation of the record on appeal, motion for leave to proceed in forma pauperis, an affidavit of indigence, and a motion for appointment of counsel. After the entry of its order on May 13, the court granted Schuler's motion to appeal in forma pauperis. The only order appealed in this case is the order of May 13 dismissing Schuler's petition for post-conviction relief. The premature notice of appeal that was filed raises issues properly emanating from that order.

The record supports the argument of the State that the essential issue raised by Schuler relates only to the legality of his sentence and does not extend to any attack upon the legality of his conviction. See *Schuler*, 668 P.2d 1333; *Evans v. State*, 655 P.2d 1214 (Wyo.1982). This case is controlled by our decision in *Whitney v. State*, 745 P.2d 902 (Wyo.1987). In that case, we applied a restrictive construction to the relief available pursuant to §§ 7-14-101 to -108, W.S.1977, and we held that this post-conviction relief statute could be invoked only for the purpose of asserting errors that resulted in the conviction of the defendant. We ruled, in effect, that the remedies available under §§ 7-14-101 to -108, W.S.1977 and Rule 36, W.R.Cr.P., are mutually exclusive. We went on to hold that, since the relief requested could not be afforded under the post-conviction relief statute, the court did not commit error in refusing to appoint counsel to assist the petitioner with the prosecution of his petition for post-conviction relief. We said:

"Because claimed constitutional error concerning sentencing cannot be reached under Wyoming post-conviction relief statutes, the court was correct in holding the application without merit, in refusing appointment of counsel, and entering an order of dismissal." *Whitney*, 745 P.2d at 904.

Had the trial court permitted Schuler to amend his petition and, under Rule 36, W.R.Cr.P., addressed his claims with respect to the illegality of his sentence on the merits, the result would be the same. The change in the statute upon which Schuler relies occurred between the time his appeal was briefed and the time when it was argued. At that juncture *Attletweedt v. State*, 684 P.2d 812 (Wyo.1984), had not been decided. In *Attletweedt*, we ruled that a sentence which was not imposed before July 1, 1983 had to be imposed under the new statute. We there alluded to the single exception with respect to which prior law was controlling and that was an original sentence imposed after the effective date. *Attletweedt* appears to be entirely compatible with *State v. Duswalt*, 153 N.J.Super. 399, 379 A.2d 1278 (1977), which unequivocally holds that a case is no longer pending after a final judgment (in Wyoming that is the judgment and sentence) has been entered in the trial court. The consideration of Schuler's claim on the merits would have resulted in a denial of relief.

Because the rule of *Whitney* forecloses us from considering sentencing issues in connection with a petition for post-conviction relief, we cannot reach the issue stated in Schuler's pro se brief nor the first and second issues in the brief presented by the State Public Defender. As to the

fourth issue in the Public Defender's Brief, *Whitney* clearly holds that no error occurred.

■ The third issue in the Public Defender's brief is a claim of ineffective assistance of appellate counsel for not presenting this problem in the initial appeal. We noted above that the petition in the district court did not present any claim with respect to the lack of effective assistance of appellate counsel. As we said in *Schuler*, 668 P.2d at 1336:

"Under normal circumstances, we would not consider this contention [whether it was error to charge a defendant with being a habitual criminal in a separate information] because it was not brought to the attention of the trial court nor was it brought to the attention of this court until the issue was raised in argument here."

We cited *Matter of Parental Rights of PP*, 648 P.2d 512 (Wyo.1982), and *Pritchard v. State, Division of Vocational Rehabilitation, Department of Social Services*, 540 P.2d 523 (Wyo.1975), for the proposition that this court ordinarily refrains from inquiring into questions not raised by the parties in the trial court.

We acknowledge the constitutional magnitude of the claim that effective assistance of appellate counsel was not afforded. See *Cutbirth v. State*, 751 P.2d 1257 (Wyo. 1988). Even though this claim is one of constitutional magnitude, we conclude that the circumstances justify the refusal to consider it. In *Cutbirth*, we said:

"In submitting a claim of deficient representation by appellate counsel, the petitioner in the post-conviction proceeding must demonstrate to the district court, by reference to the record of the original trial without resort to speculation or equivocal inference, what occurred at that trial. The particular facts upon which the claim of inadequate representation by appellate counsel rests must be presented. The petitioner then must identify a clear and unequivocal rule of law which those facts demonstrate was transgressed in a clear and obvious, not merely arguable, way. Furthermore, the

petitioner must show the adverse effect upon a substantial right in order to complete a claim that the performance of appellate counsel was constitutionally deficient because of a failure to raise the issue on appeal." *Cutbirth*, 751 P.2d at 1266.

The circumstances of this case fail to suggest, in any manner, that a clear and unequivocal rule of law was transgressed in Schuler's instance which would justify the district court in considering a claim of ineffective assistance of appellate counsel with respect to the failure to present the issue of illegal sentencing.

The order of the district court dismissing the petition for post-conviction relief is affirmed.

URBIGKIT, J., filed a dissenting opinion in which MACY, J., joined.

URBIGKIT, Justice, dissenting, with whom MACY, J., joins.

This case continues an apparent consistent result to eviscerate post-conviction relief in Wyoming and the constitutional interests which the statute was originally enacted to protect. See *Case v. State of Neb.*, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed. 2d 422 (1965) and *Young v. Ragen*, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333 (1949). I will steadfastly continue to dissent until *substantive* disposition of *substantive* issues is again returned to this court as found in the days of Justice Fred H. Blume as the foundational philosophy of this court's historically recognized criminal decisions of singular stature.

## I. ENHANCED SENTENCE FOR LIFE IMPRISONMENT FROM REPEALED STATUTE

The procedural adjudicatory disenfranchisement of James Schuler (Schuler) in this case is singularly illustrative. At the center of the life sentence given Schuler for burglary is a change in Wyoming law which presently forbids that result. Unfortunately for him, he committed the burglary a year or so too soon or, more importantly, this court refuses to recognize the

clear terminology and explicit intent of a legislative enactment. *This is an enhanced life sentence now settled by this court by procedural default as a mistake of defending counsel.*

Enhancement of sentences such as this life sentence for a nighttime business building burglary is reason why there is "no adequate room at the inn" in the Wyoming State Penitentiary in Rawlins, Wyoming for long-term incarceration of the more dangerous from whom society must be continuously protected.[1] It is also the obvious basis for the statutory change which limited habitual criminal enhancement to aggravated offenses involving a violent felony. See *Oakley v. State*, 715 P.2d 1374 (Wyo. 1986).

## II.  HISTORY OF THE PRESENT HABITUAL CRIMINAL LIFE SENTENCE PROVISION

The requirement that the habitual criminal enhancement statute could only be applied to a violent felony was provided by amendments in the 1983 session to the 1982 general recodification of the Wyoming criminal code. The recodification in Wyo. Sess. Laws ch. 75 (1982) was initially enacted without the governor's signature and became effective July 1, 1983. The 1982 revision was again substantially rewritten by Wyo. Sess. Laws ch. 171 (1983), also effective July 1, 1983. These enactments specifically emplaced the savings clause of the present statute, W.S. 6–1–101, involving conflicting penalties. W.S. 6–1–101(c) provides:

> In a case *pending on or after the effective date of this act,* involving a crime committed prior to the effective date, if the penalty under this act for the crime is different from the penalty under prior law, the court shall impose the lesser sentence. [Emphasis added.]

See *Attletweedt v. State*, 684 P.2d 812 (Wyo.1984).

Within the second revision of the code, which was approved March 8, 1983 with a delayed effective date of July 1, 1983, Schuler's life sentence enhancement came into question. The majority, after applying procedural forfeiture by failure of appellate counsel, concludes and hinges their view by obiter dictum that the designated effective date, not the fact that the penalty had been effectively repealed by enacted legislation, would apply. Unescapably, on September 9, 1983, when *Schuler v. State*, 668 P.2d 1333 (Wyo.1983) (Schuler I) was published or, more pertinently, on September 27, 1983 when the mandate was issued, enhancement for a life term for the offense committed by Schuler no longer existed in the State of Wyoming.[2]

## III.  HOW SCHULER CAME TO PROCEDURAL DEFAULT ON THE ISSUE OF A REPEALED STATUTE

Initially, as a matter of pure semantics, by applying a common sense meaning to W.S. 6–1–101(c), Schuler's case was still pending on March 8, 1983 when the diminished penalty was enacted and still pending on July 1, 1983 when the revision became effective. At that time, his conviction was not final. *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986); *Teague v. Lane*, —— U.S. ——, 109 S.Ct. 1060, 1067, 103 L.Ed.2d 334 (1989). The Wyoming legislature has provided that appeal is a matter of right for the convicted defendant and a judgment consequently appealed remains pending until conclusion after appeal by either a decision by this court affirming or retrial if reversal occurs. Certainly, *Attletweedt*, 684 P.2d 812, which considered in its substance a sentence entered after July 1, 1983, does not conclusively determine that a case is not pending while still on appeal. Succinctly, if the

---

**1.** For nearly a decade now, with construction of a new prison, this state escaped from federal judicial intrusion into operation of the state penal institution. Unfortunately, with ever increasing numbers and apparent change of administrative attitude as to commutation and parole, existent overcrowding escalates the consequent danger both inside and outside the institution.

**2.** At that time, this writer was not serving on this court, but rather was engaged as a senior member of that legislature.

Wyoming legislature had desired to enunciate the statutory criteria to be "sentenced before the effective date," rather than "pending on or after the effective date," as was done, the legislature could easily and correctly have stated its converse intent.[3] W.S. 6–1–101(c). Undeniably, when this court rendered its decision and mandate following statutorily provided appeal as a mandatory right, the enhanced sentence for the offense no longer existed for the pending criminal proceedings against Schuler. Plain, simple and specific language when considered by the most basic rule of statutory interpretation as a first rule of construction demonstrates the error in the majority. For me, the majority's logic on this point remains confused, if not just unsupportable.

The present majority opinion says nothing and really means everything in commenting:

> The briefs in that appeal [*Schuler I*] were filed prior to the effective date of the amendment to the statute upon which Schuler here relies, and, consequently, the question of whether he should have been sentenced pursuant to the amendment to the statute rather than the statute in effect at the time of his sentencing was not raised.

Briefs for both Schuler and the State were filed after the law had been enacted. The obvious issue was clearly apparent unless a decision of this court could have been expected before July 1, 1983 or we establish that counsel for Schuler and the State are incompetent to recognize the activities and enactments of the Wyoming legislature. Factually, with enactment *completed on March 8, 1983* with an effective date of July 1, 1983, the crime and conviction process occurred on the following schedule:

| | |
|---|---|
| Offense committed | May 5, 1982 |
| Trial | December 7, 1982 |
| Sentenced | January 12, 1983 |
| Appeal docketed in the Wyoming Supreme Court | February 28, 1983 |
| Brief of appellant filed | April 21, 1983 |
| Brief of appellee filed | May 23, 1983 |
| Oral argument conducted | June 15, 1983 |
| Opinion published | September 9, 1983 |
| Mandate issued | September 27, 1983 |
| Motion for Rehearing pro se by Schuler | September 29, 1983 |
| Order entered denying motion for rehearing | October 11, 1983 |

The pro se motion for rehearing addressed the rationality and proportionality of a life sentence for burglary after Schuler was abandoned by counsel for requested rehearing and probably not yet aware of the change in the law of habitual criminal penalties.

On January 16, 1987, Schuler filed a pro se, prison library maintained form for post-conviction relief under W.S. 7–14–101, stating as his basis:

> 13. a) 1) Ground One: Defendant was sentenced under a statute which was repealed prior to the Wyoming Supreme Court's decision affirming his conviction.

He requested appointment of counsel and supported his petition by a comprehensive and well-stated brief on the issue of the contended illegality of enhancement of his four-to-eight year burglary sentence with credit for time served to life as a habitual criminal.

A notice of appeal was filed on February 10, 1987 with the following comment addressed to the clerk of the district court:

> Included herewith is my Notice of Appeal, in three copies, with Certificate of Service. This Notice is filed prematurely, pursuant to Rule 2.01, W.R.A.P. Will you please file this Notice on the date that the district court dismisses/denies the Petition, and send me a file-stamped copy at that time.

---

**3.** Even within the conservative standard for adjudication in Wyoming, it is irrational to create intent from presumed legislative ignorance. Equivalency, due process and sentence proportionality should not be denied by result oriented, misconstrued legislative intent. A premier lesson of current legislative intent is to apply the specific statutory provisions through the language provided. We should not read words into a statute which are not within its plain intent. *People v. Fierer,* 124 Ill.2d 176, 124 Ill.Dec. 855, 529 N.E.2d 972 (1988).

> They said, "You have a blue guitar,
> You do not play things as they are."
> The man replied, "Things as they are
> Are changed upon the blue guitar."
> Wallace Stevens.

I am filing this Notice prematurely in consideration of the fact that your office has, in the past, failed to serve a copy of dismissal/denial orders upon prisoners. Thank you.

Responsively, the clerk of the district court advised:

Your Notice of Appeal was filed prematurely as you requested and as required in Rule 2.01, W.R.A.P. Your file stamped copies are enclosed. If an Order is filed dismissing or denying your petition, your notice will be treated as having been filed the same day as the Order.

In what seems to be the inevitable response to Wyoming post-conviction relief petitions where procedural excision is anointed and substantive issues abjured, the State filed a motion to dismiss contending that the claim could not be considered under post-conviction-relief statutes because a question of the legality of his sentence was only involved. The State offered:

It should be noted that this does not mean that there is no recourse for attacking an illegal sentence. Wyoming Rules of Criminal Procedure, Rule 36, provides that the court may correct an illegal sentence at any time. See, *Duffy v. State*, Wyo., —— P.2d ——, Slip. Op., decided 12/5/86 [730 P.2d 754 (Wyo. 1986)].

Appellant's attack upon the legality of his sentence only is not a claim which may be made under Section 7–14–101, since it in no manner attacks the proceedings resulting in his conviction.

As a second argument, the State recognized the issue of expost facto laws that if the new and old codes diverged as to penalties, the lesser penalty should be imposed. The profundity then proposed was that the legislature did not intend for W.S. 6–1–101(c) to apply to sentence enhancement under the habitual criminal statute:

It was instead an enhancement based upon the burglary and the three previous felonies. Because the enhancement was not a penalty for the crime committed, subsection (c) has no application.

This concept differentiates Schuler's four-to-eight year sentence given for burglary from the life sentence for the same burglary when enhanced. This logic clearly countervails even the majority's holding in *Schuler I*, 668 P.2d at 1340, "that the trial judge imposed but one sentence: life imprisonment."

The State then contends that with a legal issue presented, no evidentiary hearing was required and no counsel need be appointed.

The post-conviction statutes do not require appointment of counsel in all cases. Although Section 7–14–104, W.S.1977 states that the court shall appoint counsel if satisfied petitioner has no means to procure counsel, this statute must be read in pari materia with Section 7–1–110, W.S.1977. Section 7–1–110, W.S. 1977 provides that an indigent is only entitled to free counsel in post-conviction actions if the court determines that the action is one that a reasonable person would be willing to bring at his own expense.

The contention does not attack the proceedings in which petitioner was convicted and therefore fails to state a claim under Wyoming's post-conviction statutes. In any event, the Wyoming Supreme Court's opinion affirming petitioner's conviction and sentence implicitly recognized that petitioner was properly sentenced under the old habitual criminal statute. This is because subsection (c) of Section 6–1–101, W.S.1977 (June 1983 Replacement) is not applicable to the habitual criminal provision. Furthermore, it is only applicable to those cases in which the *original* sentence had not been imposed prior to the July 1, 1983 effective date. Under subsection (b) of Section 6–1–101, petitioner was properly sentenced under the old code.

For these reasons petitioner has failed to state a claim upon which relief can be granted and his petition should be dismissed. [Emphasis in original.]

The request for assistance of counsel was apparently denied on the basis that, although facing a life term, Schuler was not "entitled to free counsel in [a] post-conviction action" because *"the action is one*

*that a reasonable person would [not] be willing to bring at his own expense."* [Emphasis added.] The contention that a person with money and facing a life sentence would not have hired an attorney in this circumstance imposes the most profound absurdity upon logic that can be conceptualized in inane dissertation.[4] However, on February 19, 1987, Schuler, still not provided with counsel *as required by statute,* moved for leave to amend in order to present a W.R.Cr.P. 36 motion for relief from the illegal sentence as responsive to the *Whitney v. State,* 745 P.2d 902 (Wyo.1987) evisceration of post-conviction relief.[5]

With something less than apparent reliance on any trial court consideration and concern about delayed notice of decision, Schuler filed a designation of record on appeal, a motion for leave to proceed on appeal in forma pauperis, affidavit of indigence, and a motion for appointment of counsel on appeal with comment:

> These documents are filed prematurely, as was the Notice of Appeal, filed on February 10, 1987. These documents are to be considered by the Court only if the Petition in this action is dismissed or denied by this Court.

His expectation was subsequently honored by entry of an order of the trial court denying relief:

> THE ABOVE MATTER HAVING come before the Court upon a petition for post-conviction relief,
>
> IT IS HEREBY ORDERED THAT the petition be dismissed for the reasons set forth in the memorandum filed by the state of Wyoming on February 12, 1987.

The trial court did not consider, at least by any formal ruling, Schuler's motion for leave to amend or the W.R.Cr.P. 36 issue which had been presented by him in alternative response to consider the contended illegal sentence. With this status after trial court denial of any real consideration, this court, pending appeal, applies an alternativescope to again deny relief on review of what is stated to be "awkward proceedings."

### IV. PROCEDURAL DEFAULT EMPLACED

This alternativescope opinion analysis is completely erroneous. The majority's

---

**4.** A man with money would not have relegated himself to the incompetence displayed for post-conviction appeal and, if not granted any consideration by the state tribunal, surely would have received rational review by effective pursuit in the federal courts long before now. The stark analyses of unequal representation and denied justice can be excruciatingly extracted from Greenhalgh, *The Assistance of Counsel Clause in the Year 2000,* 25 Crim.L.Bull. 86 (1989) and Klein, *The Relationship of the Court and Defense Counsel: The Impact on Competent Representation and Proposals for Reform,* XXIX B.C.L.Rev. 531 (1988). Here, we do not even meet the criteria discussed in the last reference of "the technicality that a human body with a Juris Doctor stands next to the defendant in court." Klein, supra, XXIX B.C.L.Rev. at 553.

**5.** W.R.Cr.P. 36 stated:

> The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce the sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court having the effect of upholding the judgment of conviction. The court may also reduce a sentence upon revocation of a probation as provided by law.

W.R.Cr.P. 36, as amended and effective December 13, 1988, now provides:

> (a) *Correction of sentence.*—The court may correct an illegal sentence at any time. Additionally the court may correct, reduce, or modify a sentence within the time and in the manner provided herein for the reduction of sentence.
>
> (b) *Reduction of sentence.*—A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within one (1) year after the sentence is imposed or probation is revoked, or within one (1) year after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within one (1) year after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision. The court may determine the motion with or without a hearing.

agenda bears this out as follows: (1) denial of a motion for leave to amend; (2) rejection of consideration through denial of amendment of the W.R.Cr.P. 36 remedy which was presented because "Schuler relates only to the legality of his sentence and does not extend to any attack upon the legality of his conviction;" (3) denial of a right to counsel by the trial court foreclosed by apparent decision that the only relief available could be reached through application of a W.R.Cr.P. 36 proceeding; (4) obiter dictum analysis that by interpolation of *Attletweedt*, 684 P.2d 812, the case was not still pending when proceeding regularly on appeal for application of the curative posture afforded by the legislature through the savings clause of W.S. 6–1–101(c); and (5) even though the claim of ineffectiveness of appellate counsel is recognized to reach a constitutional magnitude procedural forfeiture of *Cutbirth v. State*, 751 P.2d 1257 (Wyo.1988), it is applied so that failure, neglect or negligence of appellate counsel is absolved for not presenting the issue of illegal sentencing.

The intrinsic theory of available amendment of the initial post-conviction-relief petition was violated in this case by neglect of the trial court to rule on the motion at all. Obviously, the constitutionality and the structural validity of the post-conviction-relief processes, as well as its preclusive effect under W.S. 7–14–103 [6] as then existed, or W.S. 7–14–103 [7] now in effect, was invoked. See *Boggs v. State*, 484 P.2d 711 (Wyo.1971).

Simplistically stated, failure of the trial court to rule on or approve the validly presented substantive issue of the amendment was reversible error. A curious result follows, however, under the general preclusive concept. Since the amendment was not permitted, the topic is not determined and a further post-conviction-relief petition is consequently justified. Furthermore, if the *Whitney*, 745 P.2d 902 justification is applied, then Schuler can immediately, when this opinion is rendered, institute separate W.R.Cr.P. 36 proceedings in accomplishment of what I previously rejected in the Whitney dissent as procedural nonsense and continue to consider wrong, but even more so here. I cannot countenance the majority's approach that favors a revolving door of justice where the issues will be addressed, perhaps substantively, only if the defendant gets in and out of the door at precisely the "right" place. Such an approach leaves the non-counseled defendant forever doomed to travel within the enclosed circle.

One can hardly find something more impermissible constitutionally than sentencing under an invalid, as repealed, sentencing provision where, under the terms of the law, the rights continue while the criminal proceeding is pending. Even if some differential character of result is applied to "sentencing," the habitual criminal proceeding here is in the nature of a conviction process which, following conviction of burglary, invokes the life sentence. It was for Schuler an offense for which he was tried but became non-existent during his criminal proceeding that he now suffers incarceration while the life penal confinement penalty for that offense no longer exists.

The principal thrust of this dissent is directed toward the procedural disenfranchisement and not otherwise as should be separately considered and the more extensively pursued subject of statutory construction and rule of lenity. However, the majority dispositively concludes that ineffectiveness of appellate counsel in the initial appeal did not occur because the constitutional magnitude of the claim that "effective assistance of appellate counsel was not

---

6. W.S. 7–14–103 read:
   Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived.

7. W.S. 7–14–103 (1988 Cum.Supp.) reads:
   (a) A claim under this act is procedurally barred and no court has jurisdiction to decide the claim if the claim:

\* \* \* \* \* \*

(ii) Was not raised in the original or an amendment to the original petition under this act.

See W.S. 7–14–105 as authorization for the amendment to the post-conviction-relief petition.

afforded" was foreclosed because the circumstances justify the reversal to consider it.

The circumstances of this case fail to suggest, in any manner, that a clear and unequivocal rule of law was transgressed in Schuler's instance which would justify the district court in considering a claim of ineffective assistance of appellate counsel with respect to the failure to present the issue of illegal sentencing.

The suggestion by derivation of this majority that "still pending" does not mean "still pending through appeal and/or retrial," if it should occur, only construes the intelligence of the legislature to be idiots or ignoramuses. The irrationality is compounded by the further contortion which is necessary to be able to announce that there was no clear and unequivocal rule of law transgressed. Not once, but twice was the error made in this invalid construction as applying an intent which was simply not justified. We are left with the expectancy as espoused by the majority that the authors of the statutory language either did not mean what they said or intend what they wrote into the law. Furthermore, the constructional and constitutional issues were present at the time of Schuler's direct appeal and should have been clearly apparent to criminal law lawyers who maintained any current knowledge of the legislative activities.[8]

My singular concern is derived from the factually unsupported application of a constitutionally unjustified argument of the majority. The logic of the majority again remains, at the very least, inscrutable. The difference between a four-to-eight year sentence and life is significant. Also significant is why the lesser sentence benefit language of W.S. 6-1-101(c) could not be applied as long as the case remained pending and unresolved during appeal. Application of procedural default of Schuler's

counsel is not sustainable on any theory no matter how this court should reconstruct the word "pending" to mean.

The syllogism as a segmented argument which deeply concerned me in *Cutbirth*, 751 P.2d 1257, now resurfaces in the majority resolution for this case. It is in the establishment of the standard for Wyoming jurisprudence that the adjudicative responsibility and the constitutional error are eliminated by the attorney failure waiver concept. This court finds procedural default of counsel by inaction, error or mistake which causes constitutional forfeiture of any rights of the defendant for substantive appellate review. Consequently, at this stage of the decisional process, no consideration is given to the claimed error in conviction process whether first denied by procedural default during trial or, more prevalent, non-inclusion upon initial appeal.

## V. INEFFECTIVENESS OF COUNSEL

However, in the adjudicatory process, the majority cannot so easily escape responsibility for review under the purview of *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821, reh'g denied 470 U.S. 1065, 105 S.Ct. 1783, 84 L.Ed.2d 841 (1985) and a variety of decisions of the United States Supreme Court where initial disenfranchisement resulted from mistake of the attorney. Having first emplaced procedural default—constitutional forfeiture—analysis is then required to analyze the omission or commission in terms of ineffectiveness of counsel. It is axiomatic by definition that if procedural default occurred, counsel mistake, negligence or inattention existed.

It is in the creativity of a way to avoid further substantive consideration on the ineffectiveness of counsel issue that this court now reaches its nadir. As a climax in attenuated logic, having denied consideration on the merits initially by constitutional

---

**8.** As a matter of fact, committee records demonstrate that representatives of the office of the attorney general attended most of the committee sessions on these enactments and the absence of members of the office of public defender is not expressly explainable except in personnel and budgetary terms. Being conversant with those proceedings would have educated that the "still pending" phraseology was adopted to mean what it said in comparison to "sentenced," which only now is grasped at to affirm this conviction.

forfeiture, the majority now abjures comprehensive review. The characterization of the degree of attention to be given to counsel's mistake, negligence or inattention as no transgression of a clear and unequivocal rule of law is a bold statement without any realistic, adequate or analytical justification derived from actual consideration, reason or logic. Such characterization without substantive analysis and scholarly consideration is nothing. Nearly every mistake can be lumped and bedded in comparable disdain to due process and equal protection criteria to sustain conviction if intent to affirm is the sole criteria of appellate adjudication.

This case comes to such a result. Not only is the majority clearly wrong in its contemplation of the clear rule in blithe disregard of both legislative intent and clear language of the statute, but is even more egregiously encumbered in adopting a principle which serves by its syllogism to deny substantive consideration of significant appellate issues. These appellate issues cannot not be conceptualized within the harmless error and plain error enactments of this court by adoption in W.R. Cr.P. 49, since neither speak to the subject of constitutional forfeiture by procedural default derived from the default, inaction, error or mistake of counsel.

> (a) *Harmless error.*—Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.
>
> (b) *Plain error.*—Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

W.R.Cr.P. 49.

## VI. EFFECT OF WYOMING'S AMELIORATIVE STATUTE

Finding error in procedural denial of the use of post-conviction relief, denial of attention to the W.R.Cr.P. 36 aspect, and denial of counsel and confined error in applying procedural default to Schuler's ineffectiveness of counsel, I would reverse. Furthermore, required proportionality of sentence emplaced within *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) is clearly disregarded by the majority, which is an error of constitutional magnitude. Finding the majority's wrongly designed course to stretch out not only to create a life sentence for Schuler but to strike fundamentals of due process, statutory construction, and criminal law principles, it is necessary to catalogue further in dissent to illuminate the scope of aberration.

Whether presented as an unconstitutional sentence error in denial of post-conviction relief or postured in consideration of ineffectiveness of counsel, it is still proper to return to the savings clause of W.S. 6-1-101(c) to determine the propriety of the application of the repealed habitual criminal punishment to Schuler as quoted earlier.[9]

In analysis of legislative intent, I would follow the well-designed pathway of Justices Stevens and Brennan that first reference is to the plain language of the statute, *Beech Aircraft Corp. v. Rainey*, —— U.S. ——, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988), with the assumption " 'that the legislative purpose is expressed by the ordinary meaning of the words used.' " *I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987) (quoting from *I.N.S. v. Phinpathya*, 464 U.S. 183, 189, 104 S.Ct. 584, 589, 78 L.Ed.2d 401 (1984)). Justice Stevens then amplified the consideration to be given to legislative history as:

> As we have explained, the plain language of this statute appears to settle the question before us. Therefore, we look to the legislative history to determine only whether this is "clearly expressed legislative intention" contrary to that language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses. See *United*

---

**9.** The majority introduces the error denial characterization of a clear and unequivocal rule. Although I strongly reject the test as constitutionally emplaced to define whether the defendant faces confinement for repealed punishment, I will even so accept the challenge and explain that the majority is clearly and unequivocally wrong, substantively as well.

*States v. James*, 478 U.S. 597, ——, 106 S.Ct. 3116, ——, 92 L.Ed.2d 483 (1986); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

*Cardoza–Fonseca*, 107 S.Ct. at 1213 n. 12. See also Aleinikoff, *Updating Statutory Interpretation*, 87 Mich.L.Rev. 20 (1988).

The word "pending" is not difficult to understand, but the majority's elongation that "pending" means the same thing as "sentenced" is difficult to comprehend because our inquiry then becomes why the plain and ordinary meaning is displaced. Webster's Ninth New Collegiate Dictionary 869 (1986) defines "pending" as "not yet decided; being in continuance." In Black's Law Dictionary 1021 (5th ed. 1979), the word "pending" reveals "[b]egun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment. Thus, an action or suit is 'pending' from its inception until the rendition of final judgment." Finality comes following rendition of the judgment and exhaustion of rights for appeal. *Teague*, 109 S.Ct. at 1067; *Allen*, 478 U.S. at 258, 106 S.Ct. at 2880.

With the clear statute and obvious legislative history, the nagging question of this case that the majority *never* explains is if the legislature wanted to confine the ameliorative benefit of W.S. 6–1–101(c) to the date of initial sentence only, why not say so?

Undeniably, the majority misconstrues not only the savings but also the effectiveness clauses all in a blind attempt to achieve the "proper" result. The history of the Wyoming criminal code effectiveness date provision of W.S. 6–1–101(c) is informative. As originally stated in Wyo. Sess. Laws ch. 75 (1982), the three provisos read:

(i) Procedural provisions of this act govern insofar as they are justly applicable and their application does not introduce confusion or delay;

(ii) Provisions of this act according a defense or mitigation apply, with the consent of the defendant; and

(iii) If the penalty for the offense under this act is different than the penalty under prior law, the court shall impose the lesser sentence.

In comment, the annotated proposed bill stated:

COMMENT:

1. Source: MPC [Model Penal Code] 1.01(2) and (3). Subsection (c) was changed because this code does not alter sentencing procedures as the MPC did. S.F. 63 (1982).

The question of the effective date and its relation to pending cases had been considered in various sessions by the interim judiciary committee. The specific source of W.S. 6–1–101(c)(iii) is not shown nor is its authorship by either staff or committee membership. A memo from committee interim judiciary committee chairman State Senator Rex Arney dated October 15, 1979 defined a principal purpose of the recodification to "eliminate sentence disparities." The existent law was essentially considered in drafting as was the laws of Indiana, Kansas, and the Model Penal Code of the American Law Institute.[10]

---

10. The history of the code, its process and preparation was detailed in a committee circular dated September 2, 1981, which was generally disseminated throughout the state as reflecting in part:

Enclosed is Draft # 1 of the proposed Wyoming Criminal Code of 1982. This draft is the result of three years of legislative work and is now being distributed for public comment. I hope you will review it and make it available to other interested persons. A series of public hearings on the draft will be announced later this fall.

*History of revision project*

The First Legislature of the State of Wyoming adopted a criminal code substantially based on Indiana's penal code. Those 1890 statutes, and some provisions carried over from an 1876 territorial criminal code, still form the nucleus of Wyoming's criminal statutes. They have been supplemented by hundreds of specific criminal penalties throughout Wyoming's laws and by additions and alterations to Title 6 as problems demanded attention. No comprehensive review of these statutes has been attempted until now.

In the mid–1970's the Law Enforcement Assistance Administration provided a grant to the Wyoming Attorney General to draft a

The effectiveness provision was considered in a committee meeting on June 12, 1982 following a staff notation, "Should be reviewed because of the possible confusion which may result due to the effective date of the act." The bill was then amended to delete the Model Penal Code provisions contained in §§ (i) and (ii) which withdrew all clauses of the Model Penal Code since the mutual consent discretionary language of Model Penal Code § (iii) had never been considered by the legislative committee.

(3) In any case pending on or after the effective date of the Code, involving an offense committed prior to such date:

(a) procedural provisions of the Code shall govern, insofar as they are justly applicable and their application does not introduce confusion or delay;

(b) provisions of the Code according a defense or mitigation shall apply, with the consent of the defendant;

(c) the Court, with the consent of the defendant, may impose sentence under the provisions of the Code applicable to the offense and the offender.[11]

Model Penal Code § 1.01 (1985).

A clear intent is defined in the Wyoming legislative history that the permissive standard of the Model Penal Code would not apply but rather that a mandatory lesser sentence criteria exist. Since the word "pending" was not defined in Model Penal Code text or comment, it is also apparent that the word was to be applied by definition generally found by court decision. Model Penal Code § 1.01 (1985). On this basis, the vast weight of the law in definitional terms generally and as applied specifically would afford the litigative benefit through appeal. Consequently, I find serious error in the one sentence disposition of this subject by the majority which retains a superseded habitual criminal life sentence for Schuler.

## VII. PRECEDENT IN CRIMINAL STATUTES FOR AMELIORATIVE PROVISIONS

Our inquiry is whether the case is still pending after initial judgment and sentence until appeal time expires or mandate issues. Considering that absolutely no Wyoming authority is cited by the majority except *Attletweedt*, 684 P.2d 812, which is only confined within the scope of that actual decision, it is indeed surprising how extensive the authority exists which countervails the majority's decision.

criminal code revision. A staff of second-year law students was hired, an advisory committee was appointed and a draft was prepared. That draft was submitted to the Joint Judiciary Interim Committee during the 1977–78 interim, and a Subcommittee was appointed to prepare the bill for introduction. After a lengthy discussion, the Subcommittee elected to conduct its own revision project because the Attorney General's draft made radical departures from Wyoming law without adequate explanation or reason.

After the 1979 Session, the criminal code revision study began in earnest with a new Subcommittee, chaired by Representative Cynthia Lummis. The Subcommittee reviewed reports prepared by the Legislative Service Office which compared Wyoming statutes and case law with the criminal codes of other states and the Model Penal Code. The Subcommittee directed staff in preparing drafts of portions of the criminal code. In September 1981, the Subcommittee authorized release of a draft criminal code which combined the earlier drafts.

Throughout the process, the Subcommittee has solicited comments from every sector of society. A mailing list was developed to keep prosecutors, judges, defense attorneys, state officials and other interested persons informed of the Subcommittee's work. Hearings were held on some of the drafts, although attendance was small so the Subcommittee discontinued them. However, interested persons were invited to attend any and all Subcommittee meetings. The Subcommittee also expressed its willingness to work with a gubernatorial task force on the criminal code. The task force was never organized.

The Subcommittee has attempted to achieve three goals with this draft: 1) to simplify and restate present statutes where they are excessively complex or redundant, 2) to propose new statutes where serious criminal activity is either not prohibited or not punished consistently with its seriousness, and 3) to replace present statutes when they are outdated and fail to serve modern needs. The Subcommittee does not claim that this draft reaches these goals. Nevertheless, it is an effort to address some serious deficiencies in Wyoming's criminal statutes.

11. This provision is the current law in New Jersey since the 1979 enactment.

## A. Federal Case Law Precedent.

The United States Supreme Court dispositively resolved the pending test in a fashion now uniformly found in the federal court system. In *Mackenzie v. A. Engelhard & Sons Co.*, 266 U.S. 131, 142–43, 45 S.Ct. 68, 69 L.Ed. 205 (1924), Justice Holmes enunciated clearly and unequivocally to anyone that "[a]n appeal is a proceeding in the original cause and the suit is pending until the appeal is disposed of." Justice Douglas agreed in *Snyder v. Buck*, 340 U.S. 15, 71 S.Ct. 93, 96, 95 L.Ed. 15 (1950):

> Section 11 [relating to abatement] by its terms applies only during the pendency of an action. But an action is nonetheless pending within the meaning of the section though an appeal is being sought, * * *.

With the difference between a life sentence for an offense that does not now exist and the term of years that can otherwise be given, relevance is found in *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), which applied the ameliorative criteria of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

> Our prior decisions establish a general rule that a change in the law occurring after a relevant event in a case will be given effect while the case is on direct review. *United States v. Schooner Peggy*, [5 U.S. 103] 1 Cranch 103 [2 L.Ed. 49] (1801); *Linkletter v. Walker*, 381 U.S. 618, 627 [85 S.Ct. 1731, 1736, 14 L.Ed.2d 601] (1965); *Bradley v. School Board of Richmond*, 416 U.S. 696, 711 [94 S.Ct. 2006, 2016, 40 L.Ed.2d 476] (1974). Since the judgment in this case has not become final, we examine the judgment against petitioners in the light of the principles laid down in the Miller cases [*Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, reh'g denied 414 U.S. 881, 94 S.Ct. 26, 38 L.Ed.2d 128 (1973), obscenity cases].

*Hamling v. United States*, 418 U.S. 87, 102, 94 S.Ct. 2887, 2900, 41 L.Ed.2d 590, reh'g denied 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974). See also the finality rule as reaching to exhaustion of rights of appeal, *Teague*, 109 S.Ct. at 1067 and *Allen*, 478 U.S. at 258, 106 S.Ct. at 2880.

Through specific provisions of two congressional enactments providing for attorney's fees, the federal court system has also been called to define pending for attorney's fee award applications to a retroactive date where the Handicapped Children Protection Act as amendment to the EHA, 20 U.S.C. § 1415(e)(4) and 1415(f) has been questioned. After enactment, it provided a retroactive factor to cases pending on July 4, 1984. Similarly, the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412 applies to cases pending on October 1, 1981. Precise adoption of these statutes including time for appeal encompass "pending" time for benefit award. *Natrona County School Dist. No. 1 v. McKnight*, 764 P.2d 1039, 1057 n. 9 (Wyo.1988); *Knights of the Ku Klux Klan Realm of Louisiana v. East Baton Rouge Parish School Bd.*, 735 F.2d 895 (5th Cir.1984); *Knights of the Ku Klux Klan Realm of Louisiana v. East Baton Rouge Parish School Bd.*, 679 F.2d 64, reh'g denied 691 F.2d 502 (5th Cir.1982); *United States for Heydt v. Citizens State Bank*, 668 F.2d 444 (8th Cir.1982); *Board of Educ. of East Windsor Regional School Dist. v. Diamond in Behalf of Diamond*, 808 F.2d 987 (3rd Cir.1986); *Rollison v. Biggs*, 656 F.Supp. 1204 (D.Del.1987). See Cohen and Jones, *The Handicapped Children's Protection Act of 1986: Congress Awards Attorneys' Fees to Handicapped Children*, 17 J.L. & Educ. 127 (1988) and Guernsey, *The School Pays the Piper, But How Much? Attorneys' Fees in Special Education Cases After the Handicapped Children's Protection Act of 1986*, 23 Wake Forest L. Rev. 237 (1988). Consequently, lacking a history which would justify a manipulated construction of when a case is pending and a firm rule in the federal courts contrary to the majority's distortion, requires the majority to seek justification somewhere else than from any definable national precedent for the final result which is embraced.

## B. Precedent in the State Courts.

The momentous mistake made by the majority in this case is conceptualized in one sentence:

*Attletweedt v. State, supra,* appears to be entirely compatible with *State v. Duswalt,* 153 N.J.Super. 399, 379 A.2d 1278 (1977), which unequivocally holds that a case is no longer pending after a final judgment, that is, a judgment and sentence, has been entered in the trial court.

However, *Attletweedt,* 684 P.2d 812, is also not necessarily incompatible with the great majority of cases with only *State v. Duswalt,* 153 N.J.Super. 399, 379 A.2d 1278 (1977), and possibly two other intermediate appellate cases from New Jersey being of a contrary persuasion. The majority has picked a supporting case which is not only within an insignificant minority but beyond the general trend of an entire series of opposite comprehensive cases. The problem with the statement is, of course, simply that a designation that a case is no longer "pending" is not determinable by entry in trial court but rather necessitates proceeding through the appellate adjudicatory process. Any preliminary resort by appellate counsel to words and phrases in singular volume relating to the word "pending" or to criminal law key number 1206(3) would quickly establish the appropriate, persuasive and conclusive authority which stands, with the one exception, totally contrary to the result oriented pathway now selected by the majority.

Among the many cases discussing pending status, none exactly relate to the statutory amendment process found here. Although encased in court made law, the Utah cases recognize pending status the same way the Wyoming legislature required in its statutory application.

In *State v. Belgard,* Utah, 615 P.2d 1274 (1980), we held that when this Court established a new rule on an essential element of a crime, a criminal defendant whose direct appeal was pending was entitled to the benefit of the new rule for the resolution of his appeal. That case involved a conviction for automobile homicide based on a jury instruction stating that the prosecution need only prove simple negligence. While Belgard's appeal was pending, this Court overturned earlier decisions and held that the prosecution had to prove criminal negligence. The State thereupon confessed error in Belgard's appeal. This Court accepted that confession, vacated the conviction, and remanded for further proceedings. Treating Belgard's case as a case of first impression, we relied on principles "well founded in comparable federal law" in holding that it was "clear from this scenario that defendant's judgment was not final at the time of our ruling in [*State v.*] *Chavez* [Utah, 605 P.2d 1226 (1979)] and accordingly he is entitled to claim the benefit of that ruling." 615 P.2d at 1275. That holding was fully supported by cited federal cases such as *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). It is also consistent with more recent holdings such as *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) (new Fourth Amendment rule applied to all cases pending on direct appeal), and *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (rule in *Lockett v. Ohio,* 438 U.S. 586, 606, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978), applied to set aside death sentence pending on direct review when Lockett decided).

After reconsidering *State v. Belgard* as applied to the similar circumstances of this case, we reaffirm its holding. In doing so, we stress that Belgard's automatic rule of retroactivity only applies by its terms to criminal cases pending on direct review when the rule is changed.

*State v. Norton,* 675 P.2d 577, 583 (Utah 1983), cert. denied 466 U.S. 942, 104 S.Ct. 1923, 80 L.Ed.2d 470 (1984), overruled on other grounds sub nom. *State v. Hansen,* 734 P.2d 421 (Utah 1986).

The Utah analysis is persuasive because of its detailed discussion. Essentially, Utah was following both what has generally been designated as the common law rule and the earlier persuasion of the California and New York courts in *In Re Estrada,* 63

Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948 (1965) and *People v. Oliver*, 1 N.Y.2d 152, 151 N.Y.S.2d 367, 134 N.E.2d 197 (1956).

The majority's sustenance is derived from the intermediate court case of *Duswalt*, 379 A.2d 1278, which defined pending as ending with trial court sentence. The shepardization of that case reveals that *Duswalt was never cited with favor by any other jurisdiction* until present time by this majority. Even the limited definition of pending was only followed by appellate favor in New Jersey in intermediate appellate decisions in *State v. Parks*, 171 N.J.Super. 61, 407 A.2d 1267 (1979) and for a countervailing bailbond question in *State v. Vendrell*, 197 N.J.Super. 232, 484 A.2d 720 (1984). The New Jersey statutory system was singularly changed in 1979 by provisions essentially the same as the Model Penal Code § 1.01(3)(a) and (c) (1985) and by the further implementation of a resentencing provision:

> Any person who is under sentence of imprisonment on the effective date of the code for an offense committed prior to the effective date which has been eliminated by the code or who has been sentenced to a maximum term of imprisonment for an offense committed prior to the effective date which exceeds the maximum established by the code for such an offense and who, on said effective date, has not had his sentence suspended or been paroled or discharged, may move to have his sentence reviewed by the sentencing court and the court may impose a new sentence, for good cause shown as though the person had been convicted under the code, except that no period of detention or supervision shall be increased as a result of such resentencing.

N.J.Stat.Ann. § 2C:1–1d(2) (West 1982). A current case rule recitation is of interest. "Appellate courts apply the law in effect at the time of decision." *State v. T.A.B.*, 228 N.J.Super. 572, 550 A.2d 528, 529 (1988). See Model Penal Code § 1.01 (1985). Clearly, even the New Jersey legislature felt required to reverse *Duswalt*. The one citation of *Duswalt* by the New Jersey Supreme Court in *State v. Maguire*, 84 N.J.

508, 423 A.2d 294 (1980) relates only to the very customary statement of the rule that the purpose of statutory interpretation is to determine legislative intent.

Specific appellate authority providing the amelioratory effect of reduced statutory penalties during appeal is found in every other jurisdiction where the direct issue was raised. These cases are extensive, but even more extensive is a broader construction that pending relates to the process of the litigation through completed appeal.

Specifically relevant are adjoining states of Utah, Colorado and Nebraska. Nearly identical in persuasion are the Colorado cases, *People v. Vigil*, 39 Colo.App. 371, 570 P.2d 13 (1977), aff'd in part and rev'd in part 196 Colo. 522, 587 P.2d 1196 (1978); *People v. Bloom*, 195 Colo. 246, 577 P.2d 288 (1978); *Salas v. District Court in and for Second Judicial Dist.*, 190 Colo. 447, 548 P.2d 605 (1976); *People v. Murphy*, 538 P.2d 481 (Colo.App.1975); *Naranjo v. District Court in and for Tenth Judicial Dist.*, 189 Colo. 21, 536 P.2d 36 (1975); *McClure v. District Court of Fourth Judicial Dist.*, 187 Colo. 359, 532 P.2d 340 (1975); *People v. Race*, 187 Colo. 204, 529 P.2d 629 (1974); *People v. Thornton*, 187 Colo. 202, 529 P.2d 628 (1974); and *People v. Thomas*, 185 Colo. 395, 525 P.2d 1136 (1974).

The view that amendatory legislation mitigating the penalties for crimes should be applied to any case which has not received final judgment finds substantial support in the common law. See *In re Estrada*, 63 Cal.2d 740, 48 Cal. Rptr. 172, 408 P.2d 948; *People v. Odom*, 8 Ill.App.3d 227, 289 N.E.2d 663; *People v. Oliver*, 1 N.Y.2d 152, 151 N.Y.S.2d 367, 134 N.E.2d 197; *State v. Pardon*, 272 N.C. 72, 157 S.E.2d 698; *Belt v. Turner*, 25 Utah 2d 230, 479 P.2d 791. *Thomas*, 525 P.2d at 1138.

The Nebraska court discerned in *State v. Randolph*, 186 Neb. 297, 183 N.W.2d 225, 228, cert. denied 403 U.S. 909, 91 S.Ct. 2217, 29 L.Ed.2d 686 (1971):

> The basic issue is, of course, the intention of the Legislature. As the Supreme

Court of California said in *In re Estrada,* 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948 (1965): "It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology."

Cf. *Cusic v. State,* 534 So.2d 1147 (Fla. 1988).

The specific applicability to the period pending completion of appeal was dispositively considered and resolved in *State v. Warner,* 192 Neb. 438, 222 N.W.2d 292 (1974) and *State v. Patterson,* 192 Neb. 308, 220 N.W.2d 235 (1974). The general principle of the amelioratory effect of a statute amending and decreasing the penalty was applied in *State v. Jonsson,* 192 Neb. 730, 224 N.W.2d 181 (1974); *State v. Ambrose,* 192 Neb. 285, 220 N.W.2d 18 (1974); *State v. White,* 191 Neb. 772, 217 N.W.2d 916 (1974); *State v. Waldrop,* 191 Neb. 434, 215 N.W.2d 633 (1974); and *State v. Goham,* 187 Neb. 34, 187 N.W.2d 305, cert. denied 404 U.S. 1004, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971).

In *People v. Oliver,* 1 N.Y.2d 152, 151 N.Y.S.2d 367, 134 N.E.2d 197 (1956), the court said: "As to a mitigation of penalties, then, it is safe to assume, as the modern rule does, that it was the legislative design that the lighter penalty should be imposed in all cases that subsequently reach the courts." The North Carolina court phrased it thus: "When, however, the law under which a defendant was convicted is amended pending appeal so as to mitigate the punishment, it is logical to assume that the legislature intended the new punishment, which it now feels fits the crime, to apply whenever possible." *State v. Pardon,* 272

N.C. 72, 157 S.E.2d 698 (1967). See, also, 21 Am.Jur.2d, Criminal Law, s. 578, p. 542; *In re Fink,* 67 Cal.2d 692, 63 Cal. Rptr. 369, 433 P.2d 161 (1967).

*Randolph,* 183 N.W.2d at 228.

The ultimate substantive contention addressed by Schuler in his post-conviction-relief effort is ineffectiveness of counsel as an issue which consequently raises the failure of both court and counsel to address the inappropriate sentence at the time the appeal was pending or when rehearing had been requested.

Other state's approaches are likewise informative and persuasive. The Iowa court similarly discerned legislative intent in *State v. Wiese,* 201 N.W.2d 734 (Iowa 1972). The North Carolina court addressed the issue of "whether the changes in the law, which occurred while defendant's appeal was pending, inure to his benefit." *State v. Pardon,* 272 N.C. 72, 157 S.E.2d 698, 700 (1967). The answer given was:

Since the judgment is not final pending appeal "the appellate court must dispose of the case under the law in force when its decision is given, even although to do so requires the reversal of a judgment which was right when rendered." *Gulf, Col. & S.F. Ry. v. Dennis,* 224 U.S. 503, 506, 32 S.Ct. 542, 543, 56 L.Ed. 860, 861.

\* \* \* \* \* \*

In *In re Estrada, supra,* the Supreme Court of California reconsidered and disapproved the four-to-three decision in *People v. Harmon,* 54 Cal.2d 9, 4 Cal. Rptr. 161, 351 P.2d 329, that the punishment in effect when a crime is committed prevails. In doing so it relied upon the rationale forcefully expressed in *People v. Oliver,* 1 N.Y.2d 152, 151 N.Y.S.2d 367, 134 N.E.2d 197:

"This application of statutes reducing punishment accords with the best modern theories concerning the functions of punishment in criminal law. According to these theories, the punishment or treatment of criminal offenders is directed toward one or more of three ends: (1) to discourage and act as a deterrent upon future criminal

activity, (2) to confine the offender so that he may not harm society and (3) to correct and rehabilitate the offender. There is no place in the scheme for punishment for its own sake, the product simply of vengeance or retribution. * * * A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law. Nothing is to be gained by imposing the more severe penalty after such a pronouncement; the excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance. As to a mitigation of penalties, then, it is safe to assume, as the modern rule does, that it was the legislative design that the lighter penalty should be imposed in all cases that subsequently reach the courts." *Id.* at 160, 151 N.Y.S.2d at 373, 134 N.E.2d 201–202.

*Pardon,* 157 S.E.2d at 701–02.

The Illinois Supreme Court in the landmark case of *People v. Harvey,* 53 Ill.2d 585, 294 N.E.2d 269, 272 (1973) reached the same result in following *People v. Chupich,* 53 Ill.2d 572, 295 N.E.2d 1 (1973) in stating:

Therefore in compliance with our decision in Chupich we hold that defendants may avail themselves of the provisions of the Unified Code of Corrections which mitigate their minimum sentences, for their direct appeals were not finally adjudicated as of the effective date of that statute.

See also *People v. Brady,* 14 Ill.App.3d 830, 303 N.E.2d 528 (1973); *People v. Hunter,* 14 Ill.App.3d 879, 303 N.E.2d 482 (1973); *People v. Holmes,* 13 Ill.App.3d 955, 301 N.E.2d 316 (1973); *People v. Kennel,* 13 Ill.App.3d 446, 300 N.E.2d 529 (1973); *People v. Havener,* 13 Ill.App.3d 312, 300 N.E.2d 43 (1973); *People v. Silagy,* 13 Ill.App.3d 339, 300 N.E.2d 30 (1973); *People v. Grimes,* 10 Ill.App.3d 1017, 295 N.E.2d 501 (1973); *People v. Nicks,* 62 Ill.2d 350, 342 N.E.2d 360 (1976); *People v. Williams,* 60 Ill.2d 1, 322 N.E.2d 819

(1975); and *People v. Morgan,* 59 Ill.2d 276, 319 N.E.2d 764 (1974). Also, any error in sentencing can be raised at any time. *Rumple v. State,* 529 N.E.2d 861 (Ind.App. 1988).

The Utah court, in specifically relating to this subject in *State v. Tapp,* 26 Utah 2d 392, 490 P.2d 334, 335–36 (1971), followed the same principle:

There are several considerations which in our minds tend to support our conclusion that where an enactment reducing the penalty for an offense has become effective prior to the conviction, a defendant is entitled to the benefit thereof by having penalty imposed in accordance with the law at the time of the sentence. The first of these is that it is the prerogative of the legislature, expressing the will of the people, to fix the penalties for crimes; and the courts should give effect to the enactment and the effective date thereof as so declared. There are some other fundamental principles engrained in our law which, though not directly controlling on the problem at hand, are generally in harmony with the policy considerations which lead to the conclusion we have reached herein. One of these is that to insist on the prior existing harsher penalty is a refusal to accept and keep abreast of the process which has been continuing over the years of ameliorating and modifying the treatment of antisocial behavior by changing the emphasis from vengeance and punishment to treatment and rehabilitation. In the same tenor are the time-honored rules of the criminal law generally favorable to one accused of crime: that in case of doubt or uncertainty as to the degree of crime, he is entitled to the lesser; and correlated thereto: that as to an alternative between a severe or a lenient punishment, he is entitled to the latter. [Footnotes omitted.]

See *State v. Pace,* 80 N.M. 364, 456 P.2d 197 (1969) as applying the death penalty denial benefit while conviction was pending on appeal.

The California rule as earlier cited has been consistently followed since *In Re Es-*

*trada,* 48 Cal.Rptr. 172, 408 P.2d 948. See also *In Re Fink,* 67 Cal.2d 692, 63 Cal.Rptr. 369, 433 P.2d 161 (1967); *In Re Falk,* 64 Cal.2d 684, 51 Cal.Rptr. 279, 414 P.2d 407 (1966); and *In Re Kirk,* 63 Cal.2d 761, 48 Cal.Rptr. 186, 408 P.2d 962 (1965).

The common law rule which can be consistently observed throughout this compendium of cases, excepting only the aberration of *Duswalt,* 379 A.2d 1278, is stated by the Tenth Circuit Court of Appeals in *Moorehead v. Hunter,* 198 F.2d 52, 53 (10th Cir.1952):

> Appellant relies upon the common law principle quite generally followed by the federal and state courts alike that where a criminal statute is amended, lessening the punishment, a defendant is entitled to the benefit of the new act, although the offense was committed prior thereto. It is conceded that these principles apply only when there is no general saving statute or a specific saving clause in the repealing statute. Concerning these principles, there is no dispute and, therefore, citation of authorities and their discussion and analysis would not be helpful.

See *Com. v. Santiago,* 462 Pa. 216, 340 A.2d 440 (1975).

> [A] judgment of conviction has not been "finally adjudicated" until (1) the judgment of conviction has been rendered, (2) the availability of appeal has been exhausted, and (3) the time for petitioning for certiorari to the Court of Appeals of Maryland and to the Supreme Court of the United States has elapsed (without regard to whether any such petition is actually filed).

*Oberlin v. State,* 9 Md.App. 426, 265 A.2d 275, 280 (1970).

> An action may be deemed pending after judgment has been rendered provided a motion for new trial is pending, or an appeal is being taken, or even as long as the time for appeal has not expired, although no appeal has in fact been made.

1 Am.Jur.2d *Actions* § 91 (1962).

The singular analysis of the general problem as frequently cited is Comment, *Today's Law and Yesterday's Crime: Ret-* *roactive Application of Ameliorative Criminal Legislation,* 121 U.Pa.L.Rev. 120 (1972). "A cause is pending when it is still open to modifications, appeal or rehearing and until the final judgment is rendered." *Ex Parte Craig,* 274 F. 177, 187 (2nd Cir. 1921), cert. denied 258 U.S. 604, 258 U.S. 617, 42 S.Ct. 272, 66 L.Ed. 793, rev'd on other grounds 282 F. 138 (2nd Cir.), cert. granted 260 U.S. 714, 43 S.Ct. 90, 67 L.Ed. 477 (1922), aff'd 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293 (1923).

Clearly stated in *In Re Egan,* 24 S.D. 301, 123 N.W. 478, 488 (1909), "[a] matter is deemed pending until it reaches a final determination in the appellate court." In *In Re Carlisle Packing Co.,* 12 F.Supp. 11, 14 (W.D.Wash.1935), aff'd sub nom. *Kelly v. United States,* 83 F.2d 783, reh'g denied 84 F.2d 541 (9th Cir.), cert. granted 299 U.S. 528, 57 S.Ct. 42, 81 L.Ed. 389 (1936), rev'd on other grounds 300 U.S. 50, 57 S.Ct. 335, 81 L.Ed. 507 (1937), the court plainly articulated, "[a]t common law and under numerous statutes, it may be conceded that an action or a suit is 'pending' until such time as there is disposition of the appeal." See also *Collins v. Ramish,* 182 Cal. 360, 188 P. 550 (1920); *Anderson v. Schloesser,* 153 Cal. 219, 94 P. 885 (1908); *Roby v. Roby,* 9 Idaho 371, 74 P. 957 (1903); and *O'Neill v. Ridner,* 42 Misc.2d 312, 248 N.Y. S.2d 167 (1964). Although the disposition was not helpful to the defendant, the pending rule was applied by the Arizona Supreme Court in *State v. Adams,* 159 Ariz. 168, 765 P.2d 992 (1988).

It is fair to summarize the status of national precedent on the confined subject of penalty amelioration as defined, refined and unanimous with the one countervailing authority, *Duswalt,* 379 A.2d 1278, relegated to a meaningless significance by subsequent statutory change in New Jersey that demonstrated even that legislature did not like the result.

## VIII. GENERAL STANDARD FOR GENERIC APPLICATION OF PENDING STATUS

In even broader application and singular greater numbers are cases analyzing

whether the pending status of litigation extends through appeal. This nearly unanimous rule establishes in definitional terms that the pending status for litigation to continue through appeal is a rule applied equally to both civil and criminal litigation. An exhaustive array of citations [12] from a broad consideration in state and federal forum is almost unanimous except for one peculiar, factually confined decision from Alaska. Principal sources for the consistent interpretation of pending proceeding as continuing through appeal are found in *Hamling*, 418 U.S. 87, 94 S.Ct. 2887; *Snyder*, 340 U.S. 15, 71 S.Ct. 93; and *Mackenzie*, 266 U.S. 131, 45 S.Ct. 68.

The one citation sometimes found which is considered to be of countervailing precedent is the peculiarly situated disciplinary proceeding in Alaska, *In Re Mackay*, 416 P.2d 823 (Alaska 1964), cert. granted 382 U.S. 803, 86 S.Ct. 28, 15 L.Ed.2d 56 (1965).

The interrelation of proceedings in Alaska with consideration by the United States Supreme Court, as well as the differential relationship of a disciplinary proceeding, can be discerned as the bases for the case which should not otherwise be considered as a total attack on the generally understood common law rule. The case is of narrow focus and not of singular precedent for the normal civil and criminal proceedings.

References to selected state precedent is informative, overwhelming and persuasive. For Montana, the common law principle is statutorily recited:

"An action is deemed to be pending from the time of its commencement *until its final determination upon appeal,* or until the time for appeal has passed, unless the judgment is sooner satisfied." *Reickhoff v. Consolidated Gas Co.*, 123 Mont. 555, 217 P.2d 1076, 1080 (1950) (quot-

**12.** *Diamond,* 808 F.2d 987 (Education of Handicapped Act); *Perzinski v. Chevron Chemical Co.,* 503 F.2d 654 (7th Cir.1974) (potato crop damage, Wisconsin law); *Tolg v. Grimes,* 355 F.2d 92 (5th Cir.), cert. denied 384 U.S. 988, 86 S.Ct. 1887, 16 L.Ed.2d 1005 (1966) (criminal); *Nicastro v. United States,* 206 F.2d 89 (10th Cir.1953); *Ex Parte Craig,* 274 F. 177 (contempt); *Rollison,* 656 F.Supp. 1204 (Handicapped Children's Protection Act); *United States v. Claus,* 5 F.R.D. 278 (E.D.N.Y.1946); *Collins,* 188 P. 550 (former action pending); *Anderson,* 94 P. 885 (statement of death); *Brown v. Campbell,* 100 Cal. 635, 35 P. 433 (1893); *Rilcoff v. Superior Court of Los Angeles County,* 50 Cal.App.2d 503, 123 P.2d 540 (1942) (multiple divorce actions); *Secondo v. Superior Court in and for Monterey County,* 105 Cal.App. 179, 286 P. 1089 (1930) (partnership accounting); *People ex rel. Grenfell v. District Court of Second Judicial District in and for City and County of Denver,* 89 Colo. 78, 299 P. 1 (1931) (criminal case); *In Re Custody of Rector,* 39 Colo.App. 111, 565 P.2d 950, 952 (1977) (child custody); *State ex rel. Andreu v. Canfield,* 40 Fla. 36, 23 So. 591 (1898) (writ or error notice); *Bowers v. Keller,* 185 Ga. 435, 195 S.E. 447 (1938) (statutory change during appeal); *Roby,* 74 P. 957 (divorce); *In Re Lee's Estate,* 240 Iowa 691, 37 N.W.2d 296 (1949) (probate); *Berlandi v. Com.,* 314 Mass. 424, 50 N.E.2d 210 (1943) (criminal); *Bull v. Bull,* 109 Mich.App. 328, 311 N.W.2d 768 (1981) (UCCJA); *Ford Motor Co. v. Jackson,* 47 Mich.App. 700, 209 N.W.2d 794 (1973), aff'd 395 Mich. 578, 236 N.W.2d 449 (1975), reh'g 399 Mich. 213, 249 N.W.2d 29 (1976) (employee compensation); *Halloran v. Blue & White Liberty Cab Co.,* 253 Minn. 436, 92 N.W.2d 794 (1958) (discovery); *Mexico Refractories Co. v. Pignet's Estate,* 161 S.W.2d 417 (Mo.1942) (injunction); *Reickhoff v. Consolidated Gas Co.,* 123 Mont. 555, 217 P.2d 1076 (1950) (quiet title); *Braddock v. Braddock,* 91 Nev. 735, 542 P.2d 1060 (1975) (divorce); *O'Neill,* 42 Misc. 2d 312, 248 N.Y.S.2d 167 (taxation of costs); *McFetters v. McFetters,* 219 N.C. 731, 14 S.E.2d 833 (1941) (separate maintenance); *Hupp v. Hock–Hocking Oil & Natural Gas Co.,* 88 Ohio St. 61, 101 N.E. 1053 (1913) (appeal purposes); *Driscoll v. McAlister Bros.,* 294 Pa. 169, 144 A. 89 (1928) (workers' compensation); *In Re Egan,* 123 N.W. 478; *Schwartz v. Jefferson,* 520 S.W.2d 881 (Tex.1975) (legislative continuance); *Pan American Bank of Brownsville v. Nowland,* 650 S.W.2d 879 (Tex.App.1983) (amendatory statute for attorneys' fees); *Cuellar v. State,* 521 S.W.2d 277 (Tex.Cr.App.1975) (criminal action pending until appellate mandate issued); *Brown v. Linkenhoger,* 153 S.W.2d 342 (Tex.App.1941) (finality comes with rehearing denial, otherwise the case remains pending); *United North & South Oil Co. v. Meredith,* 258 S.W. 550 (Tex.App.1923) (receivership); *Larson v. Fetherston,* 44 Wis.2d 712, 172 N.W.2d 20 (1969) (garnishment). Cf. *Wilson v. Clark,* 414 So.2d 526 (Fla.App.1982); *Pizarro v. State,* 330 So.2d 789 (Fla.App.1976) (statutory and constitutional interpretation); *Commercial Credit Corp. v. Ensley,* 148 Ind.App. 151, 264 N.E.2d 80 (1970); and *Kozlowski v.*

ing Mont.Code Ann. § 93–8706 (1947)) (emphasis in original). "If a case is appealed, and pending the appeal the law is changed, the appellate court must dispose of the case under the law in force when its decision is rendered." *Bowers v. Keller,* 185 Ga. 435, 195 S.E. 447, 449 (1938) (quoting 2 Cooley's Const. Lim. 790).

The Ohio court similarly stated in *Woodward v. Eberly,* 167 Ohio St. 177, 147 N.E. 2d 255, 258 (1958) (quoting *State ex rel. Cleveland R. Co. v. Atkinson,* 138 Ohio St. 157, 162, 34 N.E.2d 233, 235 (1941)):

"Under the new appellate procedure every appeal in a civil action is the identical case passing into the upper court. There is no new pleading to invoke appellate jurisdiction, no further issuance of process to be served. * * * Such an appeal when taken would constitute a part of the pending proceeding and could not be taken away without a clear and explicit expression to that effect in the amending statute. Implication or inference is insufficient; express provision is absolutely necessary."

See *Pan American Bank of Brownsville v. Nowland,* 650 S.W.2d 879 (Tex.App. 1983). See also *Bull v. Bull,* 109 Mich. App. 328, 311 N.W.2d 768 (1981).

The Nebraska court similarly discerned in *Pieper v. City of Scottsbluff,* 176 Neb. 561, 126 N.W.2d 865, 880 (1964):

The word "pending" means: "Begun, but not yet completed; unsettled; undetermined; in process of settlement or adjustment. Thus, an action or suit is 'pending' from its inception until the rendition of final judgment." Black's Law Dictionary (3d ed.), p. 1345. * * * Therefore, the act applies when an appeal is taken from the district court to this court.

See likewise *Perzinski v. Chevron Chemical Co.,* 503 F.2d 654 (7th Cir.1974); *Nicastro v. United States,* 206 F.2d 89 (10th Cir.1953); *People ex rel. Grenfell v. Dis-*

*trict Court of Second Judicial Dist. in and for City and County of Denver,* 89 Colo. 78, 299 P. 1 (1931); and *Commercial Credit Corp. v. Ensley,* 148 Ind.App. 151, 264 N.E.2d 80 (1970).

Application of the general rule on pending status during appeal can similarly be found in *Tolg v. Grimes,* 355 F.2d 92 (5th Cir.), cert. denied 384 U.S. 988, 86 S.Ct. 1887, 16 L.Ed.2d 1005 (1966); *United States v. Claus,* 5 F.R.D. 278 (E.D.N.Y. 1946); *In Re Custody of Rector,* 39 Colo. App. 111, 565 P.2d 950 (1977); *Berlandi v. Com.,* 314 Mass. 424, 50 N.E.2d 210 (1943); *Hupp v. Hock–Hocking Oil & Natural Gas Co.,* 88 Ohio St. 61, 101 N.E. 1053 (1913); and *Cuellar v. State,* 521 S.W.2d 277 (Tex.Cr.App.1975).

Directly contrary to the precedentially unsupported outpost adopted by the majority for this sole decision, my consideration of the decisional status of pending cases reaches firmly fixed historical precedent of the common law.

[T]he universal common-law rule [is] that when the legislature repeals a criminal statute or otherwise removes the State's condemnation from conduct that was formerly deemed criminal, this action requires the dismissal of a pending criminal proceeding charging such conduct. *The rule applies to any such proceeding which, at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it.*

*Bell v. State of Md.,* 378 U.S. 226, 230, 84 S.Ct. 1814, 1817, 12 L.Ed.2d 822 (1964) (emphasis added).

The broad array of retroactivity cases for the United States Supreme Court came to conclusion in *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), where the consistent and determina-

---

*State Through Dept. of Health and Human Resources,* 534 So.2d 1260, 1274 (La.App.1988). From our search of the jurisprudence, we find the law clear that this court must decide the

appeal by applying the law as it now exists and not on the basis of what the law may have been at the time of the trial of the case.

tive common law rule was similarly applied. The search and seizure principle of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, reh'g denied 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72 (1961) was applied initially "to cases still pending on direct review at the time it was rendered." *Linkletter v. Walker*, 381 U.S. 618, 622, 85 S.Ct. 1731, 1733, 14 L.Ed.2d 601 (1965) (citing *Ker v. State of Cal.*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963)). See also *Stoner v. State of Cal.*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856, reh'g denied 377 U.S. 940, 84 S.Ct. 1330, 12 L.Ed.2d 303 (1964) and *Fahy v. State of Conn.*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). *Linkletter*, 381 U.S. 618, 85 S.Ct. 1731 also established that there was no distinction to be drawn between civil and criminal litigation on retrospective review. In *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 409 n. 3, 86 S.Ct. 459, 461 n. 3, 15 L.Ed.2d 453, reh'g denied 383 U.S. 931, 86 S.Ct. 925, 15 L.Ed.2d 850 (1966), the comment on exercised privilege against self-incrimination rule of *Griffin v. State of Cal.*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, reh'g denied 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730 (1965) was addressed:

The Supreme Court of California and the Supreme Court of Ohio have both considered the question, and each court has unanimously held that under the controlling principles discussed in *Linkletter v. Walker*, 381 U.S. 618 [85 S.Ct. 1731], the Griffin rule is not to be applied retroactively in those States. *In re Gaines*, 63 Cal.2d 234 [45 Cal.Rptr. 865], 404 P.2d 473; *Pinch v. Maxwell*, 3 Ohio St.2d 212, 210 N.E.2d 883.

As in *Linkletter*, the question in the present case is not one of "pure prospectivity." The rule announced in Griffin was applied to reverse Griffin's conviction. Compare *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 [84 S.Ct. 461]. Nor is there any question of the applicability of the Griffin rule to cases still pending on direct review at the time it was announced. Cf. *O'Connor v. Ohio*, ante, [382 U.S.] p. 286. [86 S.Ct. 445, 15 L.Ed.2d 337 (1965)]

The precise question is whether the rule of *Griffin v. California* is to be applied to cases in which the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari elapsed or a petition for certiorari finally denied, all before April 28, 1965.

Again, pending cases were not within the retrospective review. See *Desist v. United States*, 394 U.S. 244, 258, 89 S.Ct. 1048, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting). Similarly, as stated again by Justice Harlan in dissent in *Mackey v. United States*, 401 U.S. 667, 681, 91 S.Ct. 1160, 1174, 28 L.Ed.2d 404 (1971):

I continue to believe that a proper perception of our duties as a court of law, charged with applying the Constitution to resolve every legal dispute within our jurisdiction on direct review, mandates that we apply the law as it is at the time, not as it once was.

The quandary of application then came to be fully synthesized in *Johnson*, 457 U.S. at 545–46, 102 S.Ct. at 2584–85 by analysis of the court:

In a consistent stream of separate opinions since *Linkletter*, Members of this Court have argued against selective awards of retroactivity. Those opinions uniformly have asserted that, at a minimum, all defendants whose cases were still pending on direct appeal at the time of the law-changing decision should be entitled to invoke the new rule. In *Desist v United States*, 394 U.S. 244, 256 [89 S.Ct. 1030, at 1037, 22 L.Ed.2d 248] (1969) (dissenting opinion), and *Mackey v United States*, 401 U.S., at 675 [91 S.Ct., at 1171] (separate opinion), Justice Harlan presented a comprehensive analysis in support of that principle. In his view, failure to apply a newly declared constitutional rule at least to cases pending on direct review at the time of the decision violated three norms of constitutional adjudication.

The singular attention of the United States Supreme Court to pending statutes as direct appeal is again decisively invoked in the most current plurality resolution as a

differentiation between final appeal and collateral review in *Teague,* 109 S.Ct. 1060. "Pending" means, for this broad purpose, prior to decision in initial appeal. This appeal should invalidate and reverse the augmented sentence and leave Schuler to serve his properly entered sentence of four-to-eight years for burglary.

### IX. CONCLUSION

Justice Frankfurter once said judicial judgment must take deep account; I only find in majority resolution a facial denigration of both precedent and justice. Consequently, I dissent.